**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

VIVA LEROY NASH,
              *Petitioner-Appellant,*

       v.

CHARLES L. RYAN, Warden,
Arizona State Prison,
              *Respondent-Appellee.*

No. 06-99007

D.C. No.
CV-97-01104-PHX-
MHM

ORDER

Appeal from the United States District Court
for the District of Arizona
Mary H. Murguia, District Judge, Presiding

Argued and Submitted
December 9, 2008—San Francisco, California

Filed September 11, 2009

Before: Stephen Reinhardt, Sidney R. Thomas, and
Richard A. Paez, Circuit Judges.

Order by Judge Paez

## COUNSEL

Thomas J. Phalen, Phoenix, Arizona, and Jon M. Sands, Federal Public Defender, Phoenix, Arizona, for petitioner-appellant Viva Leroy Nash.

Kent E. Cattani, Chief Counsel, Capital Litigation Section, Attorney General's Office, Phoenix, Arizona, and Jeffrey A. Zick, Assistant Attorney General, Phoenix, Arizona, for respondent-appellee Charles L. Ryan.

13189

## ORDER

PAEZ, Circuit Judge:

In *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003), we held that a capital habeas petitioner's statutory right to counsel also encompassed the right to competence in habeas proceedings: the right of the petitioner to be competent during those proceedings so as to be able to advise and consult with his counsel regarding issues that might arise. *Rohan* occurred during the course of district court proceedings, and therefore we had no need to address explicitly whether that right extended to an appeal. Here, we confront that issue and decide whether the statutory right to competence that we recognized in *Rohan* applies to an appeal from denial of habeas relief. The State of Arizona ("State") argues that, given the record-based nature of an appeal, the statutory right to competence should not apply to an appeal.

We do not read *Rohan* as so limited. While an appeal is record-based, that does not mean that a habeas petitioner in a capital case is relegated to a nonexistent role. Meaningful assistance of appellate counsel may require rational communication between counsel and a habeas petitioner. Because petitioner Viva Leroy Nash ("Nash") has made a prima facie showing that he may be incompetent to assist counsel with this appeal, and because counsel has identified claims that could benefit from rational communication with Nash, we grant the pending motion for a limited remand. On remand, we direct the district court to conduct appropriate proceedings to determine whether Nash is competent to communicate rationally with his counsel for the purpose of prosecuting this appeal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 1983, Viva Leroy Nash ("Nash") was convicted in an Arizona superior court of first-degree murder,

armed robbery, aggravated assault, and theft, and sentenced to death. *State v. Nash*, 694 P.2d 222, 225-27 (Ariz. 1985). The Supreme Court of Arizona affirmed his conviction in 1985. *Id.* at 222. After filing several unsuccessful petitions for post-conviction relief in both state and federal court, Nash ultimately filed the amended habeas petition that is the subject of the pending appeal.[1] Nash's amended petition raised thirteen claims, alleging violations of various Fourth, Sixth, Eighth, and Fourteenth Amendment rights. After concluding that Nash was entitled to have 9 of his thirteen claims reviewed on their merits,[2] the district court denied the petition in a memorandum decision on July 7, 2006.

On October 4, 2006, Nash timely filed a notice of appeal from the district court's judgment denying his habeas petition. Before filing a brief on appeal, however, Nash filed a motion for a competency determination, requesting a stay of the appeal pending a ruling on the motion.[3] Nash argued first that the statutory right to competence, embodied in 18 U.S.C. § 3599's right to counsel and recognized in *Rohan*, applies to an appeal. He further asserted that the progressive deterioration of his mental health rendered him incompetent to pursue an appeal, and that, accordingly, appellate proceedings should be stayed until he is found competent. The State opposed the motion. First, the State challenged Nash's assertion that the right to competence extended to an appeal from the denial of habeas relief in capital cases. The State also argued that, even

---

[1]The record reflects that Nash filed two prior petitions for post-conviction relief in the state court, both of which were denied. He also filed two prior petitions for habeas relief in the United States District Court for the District of Arizona, one of which was voluntarily dismissed and one of which was dismissed for failure to exhaust state court remedies.

[2]The district court concluded that the remaining claims were either procedurally barred or premature and not yet ripe for review.

[3]On March 14, 2008, the Appellate Commissioner stayed the briefing schedule pending further order of the court.

if such a right exists, a competency determination is not warranted in this case.

We, accordingly, must determine first whether the statutory right to competence in habeas proceedings, established in *Rohan*, applies to an appeal.[4] We hold that it does. We next examine the claims in Nash's habeas petition and conclude that, because several of them could potentially benefit from meaningful communication with counsel, Nash is entitled to a stay of the appeal if he is found to be incompetent. Last, we consider the evidence of Nash's alleged incompetence, and conclude that it is sufficient to warrant a competency determination. Accordingly, we grant Nash's motion, and because the district court is in the best position to make such a determination, we grant a limited remand with instructions to make a competency determination.

## II.    ANALYSIS

### A.    *Whether the Statutory Right to Competence in Federal Habeas Capital Cases Extends to an Appeal*

First, Nash argues that this court's decision in *Rohan*, which arose during the course of district court habeas proceedings, applies to an appeal. We agree.

*Rohan* involved 21 U.S.C. § 848(q)(4)(b),[5] which provided

---

[4]We have jurisdiction under 28 U.S.C. § 1291.

[5]*Rohan*, like this case, addressed the *statutory* right to counsel in federal habeas capital cases, not the constitutional right to counsel guaranteed by the Sixth Amendment. The source of the statutory right in *Rohan*, 21 U.S.C. § 848(q)(4)(b), has been replaced by a "materially identical statute," 18 U.S.C. § 3599(a)(2). *See Holmes v. Buss*, 506 F.3d 575, 578 (7th Cir. 2007). Section 3599 retains the core guarantees set forth in the previous statute, providing, in pertinent part, that

> [i]n any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys . . . .

for the right to counsel to petitioners in capital habeas proceedings filed under 28 U.S.C. § 2254 or § 2255. We held that the statutory right to counsel in such cases implies a statutory right to competence during those proceedings.[6] *Rohan*, 334 F.3d at 817.

In examining the contours of the statutory right to competence, we first considered the due process right to competence at trial. We observed that this right was derived from principles of competence recognized at common law, and that it remains closely tied to the capacity for rational communication, either to defend oneself, or to assist counsel in one's defense. *Id.* at 808-09. We contrasted the right to competence at trial with the Eighth Amendment's bar against execution of the insane, which focuses less on the possibility that an incompetent defendant could "go to his death with knowledge of undiscovered trial error that might set him free," and more on the prisoner's "[a]ware[ness] of the punishment [he is] about to suffer and why [he is] to suffer it." *Id.* at 809-810 (quoting *Ford v. Wainwright*, 477 U.S. 399, 422 n.3 (1986). We noted that in *Rohan*, we were "confront[ed with] a question that falls somewhere between the[ ] two lines of authority: not competence to stand trial or competence to be executed, but competence to pursue collateral review of a state conviction in federal court." *Id.* at 810. We concluded

---

[6]In *Rohan*, the district court conducted a competency determination and concluded that the petitioner, Oscar Gates, lacked the capacity to make rational choices with respect to the habeas proceedings. 334 F.3d at 806. The court appointed an attorney, Colleen Rohan, to pursue the habeas petition as Gates's "next friend." *Id.* Subsequently, Rohan reported that she was unable to pursue Gates's claims "because she could not communicate rationally with him," and requested a stay of further proceedings. *Id.* The court denied Rohan's request, reasoning that "neither due process nor the federal habeas statutes required a stay, because Rohan's appointment as next friend adequately protected Gates's interests." *Id.* Nonetheless, "[a]cknowledging that the issue was close and that judicial economy favored immediate resolution, the court certified its ruling for interlocutory review." *Id.* at 807. We accepted jurisdiction.

that because a capital habeas petitioner's incompetence could prevent him from "communicating information that he alone possesses," rational communication could still play an important role in a habeas proceeding. *Id.* at 816. In reaching this conclusion, we reasoned that although "[t]he constitutional requirement of competence to stand trial certainly does not imply a coordinate requirement on collateral review[,]" *id.* at 810, "[c]ounsel's assistance . . . depends in substantial measure on the petitioner's ability to communicate with him." *Id.* at 813. "[I]f," therefore, "meaningful assistance of counsel is essential to the fair administration of the death penalty and capacity for rational communication is essential to meaningful assistance of counsel, it follows that Congress's mandate [in 21 U.S.C. § 848(q)(4)(b)] cannot be faithfully enforced unless courts ensure that a petitioner is competent." *Id.* at 813. Noting that "[o]ur own case law all but dictates the result" we reached,[7] we concluded that the statutory right to counsel in capital habeas cases also guaranteed a right to competence during district court habeas proceedings. *Id.* at 814.

Although there are fundamental differences between district and appellate court proceedings, there is one aspect of the

---

[7]In *Rohan*, we took particular note of the Supreme Court's actions in *Rees v. Peyton* (*Rees I*), 384 U.S. 312 (1966) and *Rees v. Peyton* (*Rees II*), 386 U.S. 989 (1967), in which the Court ordered a competency determination for a habeas petitioner attempting to withdraw his petition for certiorari, 384 U.S. at 313, and then, upon the district court's finding of incompetency, stayed the proceedings. 386 U.S. at 989. We also found support for our holding in one of our own decisions, *Calderon v. United States District Court*, 163 F.3d 530 (9th Cir. 1998) (en banc), *overruled on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003), which *Rohan* described as holding that "a prisoner's incompetence is grounds for equitably tolling [the Anti-Terrorism and Effective Death Penalty Act of 1996's ("AEDPA")] one-year statute of limitations for filing habeas petitions." 334 F.3d at 814. We further noted the decisions of several state courts that supported our recognition of a statutory competency requirement in federal habeas proceedings. *See id*. at 816-19 (citing *Carter v. State*, 706 So.2d 873, 876 (Fla. 1998); *State v. Debra A.E.*, 188 Wis.2d 111 (1994); and *People v. Owens*, 139 Ill.2d 351 (1990)).

entire process that remains the same: the statutory right to assistance of counsel. We fail to see why that statutory right does not also encompass "meaningful assistance" on appeal. And, just as the capacity for rational communication is essential to meaningful assistance of counsel in the district court, counsel's ability to communicate rationally with a petitioner may in some cases be essential to the successful prosecution of an appeal.

For example, where—as was the case in *Rohan*—a petitioner challenges the constitutional validity of his conviction or sentence on the basis of ineffective assistance of counsel, such claims—both in the district court and on appeal—may depend heavily on facts outside of the state court record. *See id.* at 818 (concluding that where petitioner's principal claim was incompetency to stand trial and counsel's failure to pursue a competency hearing, "[a]t least some of the claims in [the] petition could potentially benefit from [petitioner's] assistance" because their success would "depend[ ] in large measure on facts outside the record"). Although extra-record facts would be documented in the district court record, counsel may nonetheless need to communicate with his client to understand fully the significance and context of those facts so that he may pursue the most persuasive arguments on appeal. As we recognized in *Rohan*, a claim that trial counsel presented inadequate mitigating evidence during the penalty phase implicates petitioner's ability to communicate with counsel. This same concern exists for appellate proceedings, because the petitioner "is better positioned than anyone to identify aspects of his personal history that should have been, but were not, elicited . . . [and] is in a unique position to [provide information] about the extent of his trial counsel's efforts to elicit that mitigating evidence from him." *Id.*

The ability to elicit information from a petitioner may be critical to the success of claims where the information the petitioner possesses will supply factual context that counsel cannot understand or appreciate from review of the state and

district court records. Moreover, where—as here—appellate counsel contends that inadequate fact-finding by the state and district courts forms part of the basis for relief, and requests that this court remand for an evidentiary hearing, the petitioner's ability to impart his unique knowledge of past events or personal history is essential. Appellate counsel's decision to emphasize certain arguments, and to focus on different facts and theories, may likewise depend on the information relayed by the petitioner—information that the record may supply in part, but not in whole.[8]

Although the same principles that informed our decision in *Rohan* compel the conclusion we reach here, we find additional support for our holding in the post-*Rohan* decision of the Seventh Circuit.

In reviewing the denial of a capital habeas petition, the Seventh Circuit recently examined whether the test for competence in such cases is the same as the test for competence at trial. *Holmes v. Buss*, 506 F.3d 576, 578-79 (7th Cir. 2007). In *Holmes*, the court noted at the outset that, "before taking up any other issues presented by the appeal," it had "ordered a limited remand to the district court to determine the petitioner's competence to proceed with the appeal, in light of affidavits presented by his counsel suggesting that his mental condition had deteriorated . . . ." *Id.* at 577. Acknowledging, and then setting aside, its doubts about the "legal significance of a person's lacking the mental competence to prosecute, or to assist his lawyer in prosecuting, a federal habeas corpus proceeding," the court cited—and adopted—our holding in *Rohan* for the proposition that "in a capital case a petitioner

---

[8]Contrary to the State's argument, the need for rational communication between counsel and a petitioner is unaffected by the limits imposed on judicial review by the AEDPA (enacted post-*Rohan*). The AEDPA does not modify or diminish counsel's statutory duty to provide meaningful representation, and to communicate with a petitioner to the extent necessary to accomplish that objective.

for federal habeas corpus must be competent to assist his counsel; if not, the proceeding must be stayed." *Id.* at 578. Given the procedural posture of *Holmes*, where the petitioner's competence on appeal was at issue, the Seventh Circuit necessarily understood what we clarify today: *Rohan*'s recognition of a statutory right to competence in habeas proceedings applies to an appeal.

In light of *Rohan*'s focus on competence to assist counsel in prosecuting a federal habeas petition, the Seventh Circuit's recognition that the statutory right to competence articulated in *Rohan* does not automatically disappear when a petitioner appeals from the denial of habeas relief is unremarkable. If, as suggested by *Rohan* and expressly stated in *Holmes*, it is not the "nature of the proceeding" that determines what level of competence is required, but instead "whether the defendant (petitioner, appellant, etc.) is competent to play whatever role in relation to his case is necessary to enable [the case] to be adequately presented," *Holmes*, 506 F.3d at 579, then the procedural posture of a capital habeas petition should not dictate whether the right to competence attaches. A categorical rule that would deny the right to competence during certain stages of a federal habeas proceeding would be inconsistent with the statutory right to meaningful assistance of counsel. Thus, rather than categorical rules, the inquiry should be whether rational communication with the petitioner is essential to counsel's ability to meaningfully prosecute an appeal.[9]

---

[9]The American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, while silent on the precise issue we consider, are not to the contrary. The Guidelines note that "winning collateral relief in capital cases will require changing the picture that has previously been presented. The old facts and legal arguments . . . are unlikely to motivate a collateral court." *See* American Bar Association, *Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases*, Guideline 10.15.1, cmt, *reprinted in American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, 31 Hofstra L. Rev. 913, 1085 (2003). New counsel must "continue an aggressive investigation of all aspects of the case." *Id.* at (E)(4); 31 Hofstra L. Rev. at 1080. On appeal, as well as in the district court habeas proceeding, counsel may need to communicate rationally with the petitioner to determine which facts and arguments to emphasize.

In sum, as with capital habeas district court proceedings, "[i]mplying a right to competence from a right to counsel" for capital habeas appeals "breaks no new ground." *See Rohan*, 334 F.3d at 813. We therefore hold that the statutory right to competence in capital habeas cases that we recognized in *Rohan* applies to appeals. Accordingly, a petitioner who lacks the ability to communicate rationally, and who seeks to raise claims on appeal that could potentially benefit from such communication is entitled to a stay of the appeal until the petitioner is found competent. Whether Nash's claims include those that could benefit from the ability to communicate rationally and, if so, whether he has presented sufficient evidence of incompetence to warrant a competency determination, are questions to which we now turn.

### B. Whether Nash Is Entitled to a Competency Determination

#### 1. Whether Nash's Claims Could Benefit from the Ability to Communicate Rationally

We next examine the claims that Nash seeks to raise on appeal, and whether those claims could potentially benefit from the right to competence set forth in *Rohan*. We conclude that they could so benefit.

Among the thirteen claims raised in Nash's habeas petition and decided by the district court were allegations that Nash received ineffective assistance of counsel at both the guilt and penalty phases of his trial. These claims included allegations that trial counsel failed to investigate and prepare Nash's defenses, improperly induced Nash to try the case before the trial judge, and failed to investigate and present at the penalty phase available mitigation evidence, including evidence concerning Nash's mental illness, character, background, and family history. Indeed, the district court granted a certificate of appealability on Claim 1, which alleged that Nash was denied effective assistance of counsel at the guilt phase of his

trial, and on Claim 2, which alleged that Nash was denied effective assistance of counsel at the penalty phase of his trial. There is no suggestion that counsel may not pursue these claims on appeal. *See* Reply to Response to Motion at 2 ("Two of Mr. Nash's certified claims deal with the ineffectiveness of his counsel at guilt and sentencing . . . . Because Mr. Nash was never provided any hearing on this claim at either the State or federal level, one of Mr. Nash's arguments on appeal would be that there should be a remand for evidentiary development [on this claim.]").

Although we do not yet know all of the arguments Nash's counsel will present in prosecuting this appeal, we are satisfied that, like in *Rohan*—which also involved claims of ineffective assistance of counsel, including allegations that trial counsel failed to present adequate mitigating evidence at the penalty phase—"[a]t least some of the [appellate issues that counsel have identified] could potentially benefit from [Nash's] assistance." *Rohan*, 334 F.3d at 818. Again, like the petitioner in *Rohan*, "if [Nash] were competent, he could support [these claims]. He is better positioned than anyone to identify aspects of his personal history that should have been, but were not, elicited." *Id.*

The need for rational communication here is particularly important because Nash has been assisted by several attorneys over the years, including his trial attorney Arthur G. Hazelton, state appellate counsel George Sterling and John Antieau, the attorneys who assisted him in filing his 1987 habeas petition in federal court, and current habeas counsel Thomas Phalen, Jon Sands and Paula Harms, who also represented Nash in the district court. Attempts by Nash's current counsel to contact his trial counsel have been unsuccessful. The information that Nash possesses would provide first-hand insight into the earlier proceedings, insight that might be helpful in ways that Nash's current attorneys cannot currently identify because of his alleged incompetence. *See Rohan*, 334 F.3d at 818 ("Perhaps there are cases where an incompetent petitioner's

counsel knows exactly what he needs to know and can't find out. Surely, however, those are the exception rather than the rule.") As the preceding discussion makes clear, Nash's claims may benefit from his ability to communicate rationally with his counsel even though he is prosecuting a habeas appeal, whereas the petitioner in *Rohan* was litigating his habeas petition in the district court. As noted above, neither *Rohan* nor post-*Rohan* cases interpreting or applying *Rohan* draw a distinction among the various procedural stages of a habeas proceeding, but instead focus on the types of claims at issue. For example, as the Northern District of California recently observed in applying *Rohan*, "claims of innocence and ineffective assistance of counsel in presenting mitigating evidence at the penalty phase of . . . trial" are claims that "could benefit from the ability to communicate rationally." *Hill v. Ayers*, No. 4-94-cv-641-CW, 2008 WL 683422, at *1 (N.D. Cal. Mar. 10, 2008). Similarly, as the District of Arizona noted in a recent exhaustive opinion examining the contours of *Rohan*, claims that are resolvable as a pure matter of law may not require the petitioner's assistance. *See Gonzalez v. Schriro*, 617 F. Supp. 2d 849, 854-55 (D. Ariz. 2008). The Seventh Circuit's opinion in *Holmes* is also in accord, describing—in a case involving an appeal from the denial of habeas relief—ineffective assistance of trial counsel as one of the issues that may require a layperson's contribution to counsel's strategy. 506 F.3d at 579-80.

In sum, the success of the two ineffective assistance claims on which the district court granted a certificate of appealability may depend on Nash's ability to rationally communicate with counsel. Accordingly, we turn next to whether the evidence of Nash's incompetence is sufficient to warrant a competency determination.

> 2. *Whether Nash Provided Sufficient Evidence of Incompetence to Warrant a Competency Determination*

In *Rohan*, because the district court's prior determination that the petitioner was incompetent was not disputed, we

assumed that the petitioner was incompetent. 334 F.3d at 807 n.2. As a result, we left unresolved several important issues, including "what showing a petitioner must make to warrant a competency determination" and "whether the standard [for competence to pursue habeas relief] is the same as the standard for competence to stand trial." *Id.* at 819 n.11.

Here, in contrast, the State challenges not only Nash's right to competence, but the allegations of incompetence. That is, the State contends that even if the right to competence discussed above extends to an appeal, and even if Nash's claims may potentially benefit from rational communication with his counsel, Nash (1) has failed to proffer sufficient evidence of incompetence to warrant a competency determination; and (2) by his failure to request a *Rohan* determination in the district court, has waived his opportunity to do so. We disagree. We conclude that Nash has made a threshold showing of incompetence that, at this preliminary stage, warrants a competency determination under any of the various standards we have employed to assess evidence of incompetency. Further, we hold that Nash's failure to seek a competency determination in the district court does not foreclose our consideration of his motion.

### (i) Nash's Incompetence

#### a. Competence

At trial, competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense. *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997). A competent defendant possesses "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." *Rohan*, 334 F.3d at 808 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)); *see also Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008) (noting distinction between defendants competent to be tried and

defendants competent to defend themselves). As *Rohan*, *Holmes* and the above discussion make clear, competency to pursue federal habeas relief in a death penalty case requires that the petitioner possess essentially the same mental capacity that renders him competent to stand trial: the ability to understand and communicate rationally with counsel when necessary. *See Rohan*, 334 F.3d at 813; *see also Holmes*, 506 F.3d at 579; Mae C. Quinn, *Reconceptualizing Competence: An Appeal*, 66 Wash. & Lee L. Rev. 259, 301-02 (2009) (discussing *Rohan* and *Holmes*'s approach to competence in post-conviction proceedings). With these fundamental principles in mind, we turn briefly to the evidence we have deemed sufficient to warrant a competency determination in similar contexts.

### b.    Evidence of Incompetence

At trial, the right to competence generally requires that a motion for a competency determination be granted when "reasonable cause" exists to believe that the defendant is incompetent. *See* 18 U.S.C. § 4241(a) (2006); *see also United States v. Fernandez*, 388 F.3d 1199, 1250-51 (9th Cir. 2004); *United States v. Brown*, 943 F.2d 35, 35 (9th Cir. 1991). Many factors, including history of mental illness and treatment, a finding of prior insanity, memory problems, erratic behavior, variety and quantity of medications, and attempts at suicide have been considered by courts determining whether a competency hearing should have been granted. *See McMurtrey v. Ryan*, 539 F.3d 1112, 1118 (9th Cir. 2008); *Morris v. United States*, 414 F.2d 258, 259 (9th Cir. 1969). For example, in *Rohan*, the petitioner suffered from a delusional disorder; in *Holmes*, the court remanded the case based on "affidavits presented by . . . counsel suggesting [petitioner's] mental condition had deteriorated." *Holmes*, 506 F.3d at 577.

We are satisfied that Nash has presented sufficient evidence of incompetence to warrant a competency determination under any of the various standards we have articulated.

First, according to a psychiatric evaluation conducted by Dr. Barry Morenz, Nash—like the petitioner in *Rohan*—suffers from a delusional disorder which leads him to experience auditory hallucinations, as well as grandiose and paranoid delusions. Nash has also been diagnosed with personality disorder; according to Morenz, he is "not competent to proceed with his appeals" because he "is significantly impaired in his ability to rationally and meaningfully assist his attorneys . . . ." Moreover, although Dr. Morenz opined that "[t]reatment with antipsychotic and memory-enhancing medication . . . may provide some benefit to . . . Mr. Nash[,]" he further opined that "[e]ven with these interventions, there is not a substantial probability that he can be restored to competency."

Second, in addition to Dr. Morenz's diagnoses and opinion, Nash's habeas counsel has filed a sealed declaration outlining her own difficulties in communicating with Nash. Her observations are consistent with Dr. Morenz's, detailing the ways in which Nash's delusional disorder and memory problems substantially impede his ability to rationally communicate with her regarding his personal history and other potentially critical aspects of his appeal.

Dr. Morenz's diagnoses and opinion, and the declaration presented by Nash's counsel "suggest[ ] that his mental condition ha[s] deteriorated." *See Holmes*, 506 F.3d at 577 (describing circumstances that warranted limited remand for competency determination). At this preliminary stage, therefore, Nash has presented sufficient evidence of incompetence to warrant a competency determination.

### (ii)    Failure to File a Rohan Motion

Last, the State contends that because Nash never sought a competency determination under *Rohan* in the district court, he has waived the issue and cannot now raise it on appeal. *See*

*Fry v. Melaragno*, 939 F.2d 832, 834 (9th Cir. 1991), We disagree.

First, although the limited record reveals that Nash's mental and physical health have been an issue with which habeas counsel are familiar, Dr. Morenz's recent report notes increasing cognitive decline and recent memory failure. While Dr. Morenz's report does not fully explain why counsel did not seek an earlier determination of Nash's mental incompetency, it provides context for counsel's decision to seek a competency determination in this court: ninety-three-year-old Nash's competency continues to decline.

More importantly, although the State argues that Nash should be barred from raising an issue on appeal that he did not raise in the district court, Nash's motion for a competency determination does not fit within that circumstance. Nash does not raise the issue of competence to obtain reversal of the district court's judgment. Rather, his counsel raise the issue because it does not appear that Nash is *now* capable of communicating rationally with them and they seek a limited remand for a factual determination of his competence. The limited nature of the relief sought further supports our conclusion that Nash's failure to seek relief in the district court under *Rohan* should not preclude consideration of Nash's motion. The ultimate question of how next to proceed must be addressed by this court after the district court makes a competency determination and returns the case to this court for consideration of the merits of Nash's claim.

In sum, Nash's rapidly deteriorating mental condition leads us to conclude that the precise issue we consider here—whether Nash is competent to pursue the pending appeal of the district court's denial of his habeas petition—is not subject to the waiver rule invoked by the State. Moreover, because the competency determination will afford the State the opportunity to offer all relevant evidence and fully litigate the issue of Nash's competence, we are satisfied that our deci-

sion in no way contravenes the policies underlying the waiver rule. *See Hormel v. Helvering*, 312 U.S. 552, 556 (1941) (explaining that the importance of the waiver rule lies in our "procedural scheme['s] contemplat[ion] that parties shall come to issue in the trial forum vested with authority to determine questions of fact . . . [i]n order that parties may have the opportunity to offer all the evidence they believe relevant . . . [and] that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence"). We therefore reject the State's contentions to the contrary.

For all of the above reasons, we grant Nash's motion for a limited remand. We remand this case to the district court to conduct a competency determination. The court may conduct such proceedings as it deems appropriate to reach a fair and prompt determination of Nash's competence, consistent with the views expressed in this order. The panel shall retain jurisdiction over this appeal.

**MOTION GRANTED and REMANDED.**

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.