**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: ERNEST VALENCIA GONZALES,

ERNEST VALENCIA GONZALES,
                    *Petitioner,*

v.

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF ARIZONA, PHOENIX,
                    *Respondent,*

DORA B. SCHRIRO,
  *Real-party-in-interest-Respondent.*

No. 08-72188

D.C. No.
CV-99-02016-SMM

OPINION

Petition for Writ of Mandamus

Filed October 20, 2010

Before: Stephen Reinhardt, Marsha S. Berzon and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Reinhardt

17293

## OPINION

REINHARDT, Circuit Judge:

Ernest Valencia Gonzales seeks a writ of mandamus to stay his district court federal capital habeas proceedings under

*Rohan ex rel. Gates v. Woodford*, 334 F.3d 803 (9th Cir. 2003). There, we held that when a capital habeas petitioner "raises claims that could potentially benefit from his ability to communicate rationally," *id.* at 819, his statutory right to counsel includes the right to competence during habeas proceedings. The district court denied Gonzales's motion for a competency determination under *Rohan* because "[Gonzales's] properly-exhausted claims are record-based and/or resolvable as a matter of law, irrespective of [his] capacity for rational communication with counsel," and therefore "cannot benefit from [his] personal input." Our recent decision in *Nash v. Ryan*, 581 F.3d 1048 (9th Cir. 2009), is to the contrary. In *Nash* we held that the prosecution of a habeas appeal that is record-based and resolvable as a matter of law can benefit from communication between client and counsel. *Id.* at 1054-55. Because we conclude that *Nash* controls this case, we hold that, although Gonzales's exhausted claims are record-based or legal in nature, he is entitled to a stay pending a competency determination.

## I.

In 1991, Gonzales was convicted of first-degree murder and sentenced to death. After pursuing state remedies, he sought a writ of habeas corpus in federal district court in November 1999. On February 23, 2006, after the district court had resolved the procedural status of Gonzales's claims and established a deadline for his merits briefing of non-procedurally barred claims, Gonzales's counsel moved to stay the proceedings pending a competency determination pursuant to *Rohan*, 334 F.3d at 814-15. Gonzales's attorneys indicated that their client's assistance was essential to a number of his remaining habeas claims, and that due to a progressive deterioration in Gonzales's mental health he had lost the ability to rationally communicate with his counsel and assist them.

In response, the district court initiated proceedings to determine Gonzales's competency and ordered the parties to sub-

mit expert reports on Gonzales's mental health. The district court granted the government's motion to transfer Gonzales to Arizona State Hospital for an extended mental health assessment. The product of that assessment, a report by supervising psychologist Dr. James Seward, expressed "reservations concerning the veracity of Mr. Gonzales's symptoms," but concluded that he suffered from a "genuine psychotic disorder" and was "currently . . . unable to communicate rationally for any extended period of time, such as would be required by a legal proceeding."

Gonzales's attorneys submitted to the district court a list of pending habeas claims that they contended could benefit from rational communication with their client, including a claim that Gonzales's Sixth Amendment rights were violated because the trial judge was openly hostile toward Gonzales and refused to recuse himself. The district court determined that Gonzales was not entitled to a stay under *Rohan* even if he had a psychotic condition rendering him incompetent to confer with counsel. The district court held that Gonzales's claims, including his claim of judicial bias, were all "record-based and/or resolvable as a matter of law," and accordingly could not benefit from his ability to communicate rationally with counsel, as required by *Rohan*. 334 F.3d at 818-19. Having so ruled, the district court did not hold a hearing to determine whether Gonzales was in fact incompetent to communicate meaningfully with counsel for purposes of a habeas proceeding.

Gonzales filed an emergency petition for a writ of mandamus, and we ordered a temporary stay of the district court's proceedings to allow us to consider the petition. We also stayed our own proceedings pending the resolution of *Nash*. Having issued our decision in *Nash*, we now lift the stay on our proceedings and address the merits of Gonzales's petition for mandamus.

## II.

**[1]** *Nash* held that the prosecution of a capital habeas appeal, which is necessarily confined to the record, could benefit from communication between client and counsel. 581 F.3d at 1050 ("While an appeal is record-based, that does not mean that a habeas petitioner in a capital case is relegated to a nonexistent role."). Specifically, we concluded that Nash's claim of ineffective assistance of counsel could benefit from his ability to communicate rationally with counsel even though his appeal was record-based. 581 F.3d at 1055. We held that

> [t]he need for rational communication here is particularly important because Nash has been assisted by several attorneys over the years . . . . The information that Nash possesses would provide first-hand insight into the earlier proceedings, insight that might be helpful in ways that Nash's current attorneys cannot currently identify because of his alleged incompetence.

*Id.* at 1055-56.

**[2]** *Nash* squarely controls this case, foreclosing the district court's conclusion that a stay under *Rohan* is categorically unavailable when a capital habeas petitioner's claims consist only of record-based or legal questions. *Id.* at 1050. Rather than relying upon categorical rules, *Nash* made clear that the "inquiry should be whether rational communication with the petitioner is essential to counsel's ability to meaningfully prosecute" a capital habeas claim. *Id.* at 1054. Had the district court undertaken the claim-specific inquiry required by *Nash*, he would have been compelled to conclude that "communication with [Gonzales] is essential to counsel's ability to meaningfully prosecute" Gonzales's habeas claims. *Id.* Gonzales, like Nash, "has been assisted by several attorneys over the years" — in fact, he had eleven different attorneys over the

course of his trial and sentencing, and was self-represented for part of that time. Gonzales's claim of judicial bias centers on events regarding which "counsel may . . . need to communicate with [Gonzales] to understand fully the significance and context" of key facts so that counsel can pursue the most persuasive arguments. *Nash*, 581 F.3d at 1048. Thus, no less than Nash's claim of ineffective assistance of counsel, Gonzales's judicial bias claim could potentially benefit from the "first-hand insight into the earlier proceedings" that a competent petitioner would be able to provide. *Nash*, 581 F.3d at 1056.

**[3]** *Nash* thus compels the conclusions that Gonzales has raised at least one claim that could potentially benefit from rational communication with counsel and that he is accordingly eligible for a stay under *Rohan*.

### III.

**[4]** We consider five factors when deciding whether to grant mandamus relief: (1) whether the petitioner has no other adequate means, such as direct appeal, to secure relief; (2) whether he will suffer damage not correctable on appeal from final judgment; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the order represents an oft-repeated error by the district court; and (5) whether the order raises new and important problems or legal issues of first impression. *See Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). The five *Bauman* factors "serve only as a useful starting point," rather than an exhaustive set of considerations. *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1301 (9th Cir. 1982). We may also consider, for example, "whether there are other compelling factors relating to the efficient and orderly administration of the district courts." *Id.*

Rarely if ever will there be a case in which every one of the five *Bauman* factors indicates the same result or is relevant or applicable. *See Bauman*, 557 F.2d at 655. For example, factors (4) and (5) are in direct conflict with each other, and it

would appear to be impossible to meet both criteria in the same case. Accordingly a showing of less than all of the *Bauman* factors, indeed of only one, does not mandate denial of the writ. *See Cole v. United States Dist. Court*, 366 F.3d 813, 817 (9th Cir. 2004). While the absence of clear error ordinarily will defeat a petition for writ of mandamus, *DeGeorge v. United States District Court*, 219 F.3d 930, 934 (9th Cir. 2000), when a mandamus petition "raises an important issue of first impression . . . a petitioner need show only 'ordinary (as opposed to clear) error.' " *San Jose Mercury News, Inc. v. United States District Court*, 187 F.3d 1096, 1100 (9th Cir. 1999); *see also In re Cement Antitrust Litig.*, 688 F.2d at 1307 ("[W]e see no legitimate reason for refraining from exercising our supervisory authority where we can determine that an error has been made but cannot, for whatever reason, characterize the error as 'clearly' erroneous").

**[5]** This is a supervisory mandamus case, presenting an issue important to "proper judicial administration in the federal system." *LaBuy v. Howes Leather Co.*, 352 U.S. 249, 259-260 (1957). "Certain concepts related to the traditional use of mandamus are not necessarily applicable in supervisory mandamus cases, or, at the least, are applied differently." *In re Cement Antitrust Litig.*, 688 F.2d at 1301. Mandamus relief may be appropriate in supervisory mandamus cases even if *Bauman*'s second factor — that the error cannot be corrected on appeal from the final judgment — is absent. *LaBuy*, 352 U.S. at 254-55. "[I]n supervisory mandamus cases involving questions of law of major importance to the district courts, the purpose of our review — and the reason for our correcting an error made by a trial judge — is to provide necessary guidance to the district courts and to assist them in their efforts to ensure that the judicial system operates in an orderly and efficient manner." *In re Cement Antitrust Litig.*, 688 F.2d at 1307.

**[6]** We conclude that this is the type of case compelling the exercise of our supervisory mandamus power, because the

district court's erroneous refusal to stay proceedings in this capital case raises the prospect of months, if not years, of habeas proceedings that will almost certainly be vacated or reversed. The *Bauman* factors support this conclusion. As to the first *Bauman* factor, it is not clear that Gonzales has any "other adequate means, such as a direct appeal, to attain the relief he . . . desires." *Bauman*, 557 F.2d at 654. Although Gonzales could appeal the district court's stay denial if his habeas petition were ultimately denied, in order to succeed on such an appeal he would have to establish his incompetency retrospectively. The Supreme Court has emphasized that such retrospective competency determinations are inherently difficult even "under the most favorable circumstances," *Drope v. Missouri*, 420 U.S. 162, 183 (1975), and this court views them with disfavor. *See, e.g.*, *Moran v. Godinez*, 57 F.3d 690, 696 (9th Cir. 1994) (recognizing that when a court erroneously fails to hold a contemporaneous competency hearing "it often may be impossible to repair the damage retrospectively") (superseded on other grounds by statute as described in *McMurtrey v. Ryan*, 539 F.3d 1112, 1119 (9th Cir. 2008).[1] Given the disfavored character of retrospective competency evaluations, an appeal at the end of Gonzales's district court proceedings can hardly be deemed an adequate alternative means of relief for Gonzales. The second *Bauman* factor is satisfied for similar reasons: while we can only speculate as to how the difficulties of retrospective evaluation would affect Gonzales's case, to force him to accept a disfavored and inherently difficult retrospective competency evaluation, rather than staying proceedings and conducting a contemporaneous evaluation as required by *Rohan* and *Nash*, would in itself serve to impose upon him "damage not correctable on

---

[1]We recognize that we have allowed retrospective competency determinations in circumstances where, as here, contemporaneous medical and psychiatric reports exist. *See Moran*, 57 F.3d at 696-98; *Odle v. Woodford*, 238 F.3d 1084, 1089 (9th Cir. 2001) (citing *de Kaplany v. Enomoto*, 540 F.2d 975, 986 & n.11 (9th Cir. 1976)). But even in such cases, we have emphasized the limitations of such hearings and have never suggested that they are full substitutes for a contemporaneous determination.

appeal." *Bauman*, 557 F.2d at 654. Third, because this is a supervisory mandamus case, Gonzales need only show that the district court has committed ordinary legal error. *In re Cement Antitrust Litig.*, 688 F.2d at 1307. This requirement is, without question, satisfied here, as the district court's refusal to issue a stay is in direct conflict with the principles established by *Rohan* and *Nash*. Finally, the fifth *Bauman* factor also somewhat supports mandamus, as the question of whether a capital habeas petitioner in district court whose claims are entirely legal or record-based is entitled to a stay pending a competency determination is an important legal question of first impression in this circuit, albeit one we conclude is governed by our opinion in *Nash*.

**[7]** Moreover, this is an appropriate case for exercise of the supervisory mandamus power because in requiring the district court to conduct a competency determination prior to any further proceedings on the merits of Gonzales's habeas petition, we "provide necessary guidance to the district courts," *In re Cement Antitrust Litig.*, 688 F.2d at 1307, as to how they should proceed in capital habeas cases in which the petitioner may be incompetent but the petition has already been filed and presents only record-based claims or claims that can be decided as a matter of law. Such a decision will help to "assist the [district courts] in their efforts to ensure that the judicial system operates in an orderly and efficient manner." *Id.* It will do so by preventing district courts from wasting considerable resources on capital habeas proceedings in which a petitioner is incapable, as a result of incompetency, of availing himself of the assistance of counsel. Granting the writ in this case thus directly serves the fundamental purpose of supervisory mandamus — promoting the efficiency of the judicial system. *See In re Cement Antitrust Litig.*, 688 F.2d 1297 at 1301.

The petition for a writ of mandamus is GRANTED.