**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MILTON LEWIS,
        *Petitioner-Appellant,*

v.

ROBERT L. AYERS,
        *Respondent-Appellee.*

No. 11-15309

D.C. No.
2:02-cv-00013-
KJM-GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Jr., District Judge, and
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted
January 18, 2012—San Francisco, California

Filed May 30, 2012

Before: M. Margaret McKeown, Richard R. Clifton, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Clifton

5973

## COUNSEL

Gary D. Sowards (argued), David A. Senior, Ann K. Tria, McBreen & Senior, Los Angeles, California, for the petitioner-appellant.

Barton Bowers (argued), Michael P. Farrell, Michael A. Canzoneri, Office of the Attorney General, Sacramento, California, for the respondent-appellee.

## OPINION

CLIFTON, Circuit Judge:

Milton Otis Lewis was sentenced to death following California convictions for first-degree murder and other crimes.

While seeking federal habeas relief, Lewis requested a stay of the proceedings on the ground that he was not competent at the time to assist counsel. We have previously held that a habeas petitioner in a capital case is entitled to such a stay if he is not presently competent and is raising a claim as to which he could potentially benefit if he could communicate rationally with his attorney. *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 819 (9th Cir.), *cert. denied*, 540 U.S. 1069 (2003).[1] Following an evidentiary hearing on Lewis's competency, the district court denied the requested stay based on its determination that Lewis was competent to proceed.

Lewis seeks an immediate appeal of the competency determination or, in the alternative, mandamus relief. We conclude that we lack jurisdiction to review the competency determination at this time because it is not an immediately appealable order. We also conclude that mandamus relief is not appropriate. We thus dismiss the appeal and deny the petition for writ of mandamus.

## I.   Background

Lewis was convicted in 1990 of one count of first-degree murder, two counts of robbery, one count of burglary, and one count of attempted murder. As to the first-degree murder conviction, the jury also found the special circumstances of rob-

---

[1]We note that the Supreme Court recently granted certiorari to review our decision in *In re Gonzales*, 623 F.3d 1242 (9th Cir. 2010). *Ryan v. Gonzales*, 132 S. Ct. 1738 (2012). Our decision in *Gonzales* applied *Rohan* (and our subsequent decision in *Nash v. Ryan*, 581 F.3d 1048 (9th Cir. 2009)) and held that the petitioner was entitled to a stay pending a competency determination because he had raised a claim that could benefit from rational communication with counsel. 623 F.3d at 1246. Even if the Court reversed *Gonzales* in a way that effectively overrules *Rohan*, the result in this case would be the same because we hold here only that the district court's denial of a stay after a determination that petitioner is competent is not subject to immediate appeal and not deserving in this case of mandamus relief.

bery murder and burglary murder, and, at the penalty phase, returned a verdict of death. The California Supreme Court affirmed on direct appeal the convictions and death sentence. *People v. Lewis*, 22 P.3d 392 (Cal. 2001). Lewis sought post-conviction relief in state court, but his petitions were denied.

Lewis filed a habeas petition under 28 U.S.C. § 2254 in the Eastern District of California on March 31, 2003, followed by an amended petition on December 13, 2004, which asserted 103 claims. The district court granted summary judgment in favor of the State on 74 of the claims in 2008. Other claims remain pending.

In a declaration filed in August 2007, Dr. Pablo Stewart, a psychiatrist retained on behalf of Lewis, declared that, in his expert opinion, Lewis was mentally incompetent at the time of the offense, at the time of the police interview, at the time of trial, and at the time of the declaration. This declaration was filed in response to a query by the magistrate judge, made during a hearing regarding a motion for an evidentiary hearing on some of the habeas claims, about whether Lewis was presently competent. After Dr. Stewart's declaration was filed, the magistrate judge, in order to clarify the assertion of present incompetency, issued an order requiring Lewis to either file a motion to stay the proceedings based on current incompetency or abandon the assertion that he was at that time incompetent. Lewis filed a motion to stay proceedings because of incompetency.

The magistrate judge held an evidentiary hearing on Lewis's competency. Dr. Stewart testified at the hearing, as did an expert for the State, Dr. Roderick Ponath, and Lewis's counsel for post-conviction proceedings, David Senior.

Dr. Ponath examined Lewis during two full interviews in 2009 and a handful of other brief exchanges around that time. In a declaration filed prior to the evidentiary hearing, Dr. Ponath stated that Lewis suffered from a mental disorder, but

he later testified that the disorder "was really minimal effect, minimal impairment." Dr. Ponath described how Lewis, without assistance, could describe his appeal process and the issues he and counsel had discussed pursuing, and Dr. Ponath expressed the view that Lewis was able to communicate sufficiently with counsel. Thus, Dr. Ponath concluded that Lewis had, at the time of his examination, the "sufficient present ability to consult with his attorney with a reasonable degree of rational understanding."

At the evidentiary hearing, Dr. Ponath gave further testimony that Lewis's disorder was possibly influenced by Lewis's past methamphetamine use. Dr. Ponath did not believe Lewis had an impairment that required treatment, however. On cross-examination, Dr. Ponath stated that, at least at the time of his testimony, San Quentin Prison had a procedure in place to identify individuals with major mental disorders, but that Lewis was never identified as a potential candidate for monitoring or treatment.

Dr. Stewart, Lewis's expert, first examined Lewis in two interviews in 2003. At that time, Dr. Stewart reported that Lewis "demonstrated paranoid delusions, ideas of reference, loose associations, pressured speech, clanging associations, and inappropriate affect . . . ." Dr. Stewart reported that during his third examination of Lewis in July 2007, Lewis "present[ed] as much improved from the previous examinations." Despite the improvement, however, Dr. Stewart stated that Lewis appeared to be "guarding against appearing mentally ill, but [was still] marked by evident indications of psychotic ideation."

As part of his examinations of Lewis, Dr. Stewart administered the MacArthur Competence Assessment Tool for Criminal Adjudication ("MacCAT"), a standardized test for determining competency of criminal defendants. In the last administration of the MacCAT in 2007, Lewis had "improved measurably," particularly in two of the three sections, where

his score placed him in the "minimal to no impairment" range for the "Understanding" portion, and the "mild impairment" range for the "Reasoning" portion. In the third category, however, Lewis showed no improvement from 2003 and remained in the "significantly impaired" range for the "Appreciation" portion.

Ultimately, Dr. Stewart, while recognizing in his declaration the "waxing and waning of Mr. Lewis's functioning," concluded in his testimony at the evidentiary hearing that "Lewis does not have the capacity to rationally communicate with counsel."

On January 26, 2010, the magistrate judge issued findings and recommendations which concluded that the motion to stay should be denied because Lewis was "currently competent enough to proceed in his habeas action." On September 2, 2010, the district judge adopted in full the findings and recommendations and denied Lewis's motion for a stay of proceedings.

Lewis seeks to appeal the competency determination, asserting that we have jurisdiction to review that determination as an immediately appealable collateral order. Alternatively, Lewis petitions for a writ of mandamus to stay the habeas proceedings because of his present incompetency. We address each argument in turn.

## II.  The Collateral Order Doctrine and the Competency Determination

[1] We have jurisdiction pursuant to 28 U.S.C. § 1291 to consider appeals in habeas cases from interlocutory decisions of the district court that fall under the collateral order doctrine. *Bittaker v. Woodford*, 331 F.3d 715, 717-18 (9th Cir. 2003); *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (setting forth the collateral order doctrine). "[T]o be appealable an interlocutory order must satisfy three

requirements: (1) it must be 'conclusive'; (2) it must 'resolve an important question separate from the merits'; and (3) it must be 'effectively unreviewable on appeal from a final judgment.' " *Osband v. Woodford*, 290 F.3d 1036, 1039 (9th Cir. 2002) (quoting *Wharton v. Calderon*, 127 F.3d 1201, 1203 (9th Cir. 1997)). All three requirements must be satisfied to qualify as a collateral order for the purpose of appeal. *Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 997 (9th Cir. 2003). The competency determination fails all three requirements.

We considered a similar question in the context of a federal criminal prosecution in *United States v. No Runner*, 590 F.3d 962, 964 (9th Cir. 2009). In that case the defendant, claiming amnesia due to brain injury, was found mentally competent to stand trial by the district court after a competency hearing. The defendant immediately sought to appeal that determination. *Id.* at 963-64. We held that a pretrial competency determination failed to satisfy both the first and third requirements of the collateral order doctrine.

**[2]** Regarding the first requirement, we held that "[a] pretrial competency order does not conclusively determine the question of competency." *Id.* at 964. We noted that "the question of competency remains open throughout the trial, and may be raised by the defendant, or by the court, *at any time*." *Id.* (emphasis added); *cf. Panetti v. Quarterman*, 551 U.S. 930, 934 (2007) ("Prior findings of competency do not foreclose a prisoner from proving he is incompetent to be executed because of his present mental condition.").

**[3]** So, too, may Lewis raise his competency at any time in his capital habeas proceedings. *See Nash*, 581 F.3d at 1058-59 (holding that a capital habeas petitioner may assert incompetency for the first time on appeal and granting a limited remand for a competency determination prior to any further adjudication of the appeal). Though the district court determined that Lewis was currently competent to proceed, if cir-

cumstances change such that Lewis subsequently becomes incompetent during the course of his habeas proceedings, those proceedings may not continue.[2] *See Rohan*, 334 F.3d at 819 ("[W]here an incompetent capital habeas petitioner raises claims that could potentially benefit from his ability to communicate rationally, refusing to stay proceedings pending restoration of competence denies him his statutory right to assistance of counsel, whether or not counsel can identify with precision the information sought.").[3] Accordingly, a competency determination in habeas proceedings is not a "conclusive" order, and the competency determination here does not satisfy the first requirement of an appealable collateral order.

[4] As for the third requirement of the collateral order doctrine, we concluded in *No Runner* that "[the] right [to competency] can be protected adequately by post-conviction appellate review." 590 F.3d at 966. We expressly rejected the

[2]Consistent with our holding here, in a subsequent order the magistrate judge discussed the unfixed nature of the competency determination, clarifying that "[i]f petitioner in this case were to later make a colorable showing of changed circumstances, e.g., that petitioner had reverted to the condition observed by Dr. Stewart when the doctor first met petitioner, the undersigned would be *mandated* by Ninth Circuit precedent to once again halt proceedings and consider the changed circumstances in a motion to stay proceedings."

[3]The State contends that *Rohan* should be reevaluated in light of the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). " '[W]e may overrule prior circuit authority without taking the case en banc when an intervening Supreme Court decision undermines an existing precedent of the Ninth Circuit, and both cases are closely on point.' " *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (quoting *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1123 (9th Cir. 2002)). We decline to reevaulate *Rohan* because *Pinholster* is not closely on point and does not undermine the holding in *Rohan*. *Pinholster*'s limitation on the evidence that can be reviewed in a federal habeas proceeding, 131 S. Ct. at 1398, does not undermine the rule from *Rohan* that a capital habeas petitioner is entitled to be able to communicate rationally with counsel where necessary to assist in making his case.

defendant's argument that the right to competency is akin to the rights afforded by the Double Jeopardy Clause: "The Supreme Court . . . has never held that incompetency includes an absolute right not to be tried, or that a competency determination cannot be reviewed effectively on appeal after conviction." *Id.* The same reasoning applies to capital habeas proceedings.

**[5]** We also conclude that Lewis's current claim does not satisfy the second collateral order requirement, that it must resolve an important question separate from the merits. One of Lewis's surviving habeas claims before the district court "alleges that petitioner was at all relevant times incompetent to waive rights, assist trial counsel, and stand trial." Although this claim asserts incompetency at all times, not just that Lewis is currently incompetent, a determination of Lewis's present competency is of the "nature as to affect, or to be affected by, [a] decision of the merits" on that claim. *Cohen*, 337 U.S. at 546. Consequently, we conclude that the substance of the competency determination "substantially overlap[s] [with the] factual and legal issues of the underlying dispute, making such determinations unsuited for immediate appeal as of right under § 1291." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

**[6]** Because Lewis's attempt to appeal the district court's denial of a stay does not satisfy any of the three requirements for an appealable collateral order, we lack jurisdiction to review that order.

### III.   Mandamus Relief

**[7]** " 'To issue the writ, the court must be firmly convinced that the district court has erred, and that the petitioner's right to the writ is clear and indisputable.' " *United States v. Austin*, 416 F.3d 1016, 1024 (9th Cir. 2005) (quoting *Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 993 (9th Cir. 2004)). "Whether a writ of mandamus should be granted is deter-

mined case-by-case, weighing the factors outlined in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977)." *Cole v. U.S. Dist. Court*, 366 F.3d 813, 816-17 (9th Cir. 2004).

In *Bauman*, we established five guidelines to determine whether mandamus is appropriate in a given case: (1) whether the petitioner has no other means, such as a direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression. 557 F.2d at 654-55. Lewis does not contend that the fourth or fifth factors are applicable here, and we agree. We further conclude that the first three factors do not counsel in favor of mandamus relief.

As to the first and second factors, we have already concluded, in our discussion of the collateral order requirements, that Lewis is entitled to full review of the competency determination after final judgment on his habeas petition and that any error in the competency determination is correctable at that time. *No Runner*, 590 F.3d at 965-66.

As to the third *Bauman* factor, we conclude that the district court's determination that Lewis was competent at that time was not clearly erroneous. Clear error is found when a reviewing court has a " 'definite and firm conviction that a mistake has been committed.' " *See Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). If the district court's findings are plausible in light of the entire record, we may not reverse, even if we would have weighed the evidence differently. *See Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004); *see also Katie A. ex rel.*

*Ludin v. L.A. Cnty.*, 481 F.3d 1150, 1155 (9th Cir. 2007). " 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.' " *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003) (quoting *United States v. Working*, 224 F.3d 1093, 1102 (9th Cir. 2000)); *see also United States v. Al Nasser*, 555 F.3d 722, 727 (9th Cir. 2009) (district court's choice of one of two plausible accounts was not clearly erroneous). Because there were two permissible views of the evidence that was presented to the magistrate judge, the competency determination was not clearly erroneous.

Reports from examinations of Lewis supported the finding that he was competent to proceed. The magistrate judge appeared to accept Dr. Stewart's assessment that Lewis had a serious impairment that rendered him incompetent at the time of the 2003 examination. However, it was not clear error to concurrently give weight to Dr. Ponath's later examinations of Lewis that evinced a sufficiently improved "ability to understand and communicate rationally with counsel when necessary." *Nash*, 581 F.3d at 1057.

Dr. Stewart did not dispute the behavior reported by Dr. Ponath in his later examinations of Lewis, but testified that he would still characterize Lewis as incompetent. Dr. Ponath, on the other hand, was skeptical of Dr. Stewart's diagnosis, opining that Lewis's condition should not improve as dramatically as it did between 2003 and 2007 if Lewis in fact had the degenerative condition that Dr. Stewart diagnosed him as having.

Faced with this conflicting expert testimony, it was not clearly erroneous for the district court to find that the evidence weighed in favor of a competency finding. The magistrate judge noted that Lewis was directly responsive in his answers about his case to Dr. Ponath, and that this correlated with Lewis's high score on the "Understanding" portion of the MacCAT in 2007. Such an ability to understand, coupled

with only a "mild impairment" in reasoning capability, could plausibly indicate an ability to rationally communicate with counsel.[4] Further, Lewis's responsive and otherwise normal trial testimony illustrated the waxing and waning nature of Lewis's mental condition.

[8] The district court was thus presented with contrasting opinions that reasonably supported both sides of the competency issue, and it was plausible to conclude that the State's evidence was more persuasive. We do not have a definite and firm conviction that a mistake was made in the competency determination. Consequently, this final factor also counsels against granting mandamus relief.

## IV. Conclusion

The appeal is dismissed for lack of jurisdiction to collaterally review the competency determination. The petition for writ of mandamus is denied.

**APPEAL DISMISSED FOR LACK OF JURISDICTION; PETITION FOR WRIT OF MANDAMUS DENIED.**

---

[4]Lewis contends that his consistent poor performance on the "Appreciation" portion of the MacCAT precludes a finding of competence. The magistrate judge considered the declarations and testimony on the administration of this test, and it was not clearly erroneous to place more weight in the areas of Lewis's improved test scores (and the interview with Dr. Ponath consistent with those improvements) over Lewis's repeatedly lower scores on the "Appreciation" portion.