[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12847
_____

D.C. Docket No. 1:07-cv-23009-DMM

SEBURT NELSON CONNOR,

Petitioner-Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 27, 2013)

Before TJOFLAT, HULL and MARTIN, Circuit Judges.

MARTIN, Circuit Judge:

Seburt Nelson Connor, a Florida death row prisoner, appeals from the

District Court's denial of his petition for writ of habeas corpus, brought pursuant to

28 U.S.C. § 2254.  The District Court granted Mr. Connor a certificate of appealability (COA) for these two issues: (1) whether the District Court erred by denying petitioner's second motion for a competency hearing and stay; and (2) whether the District Court erred in denying petitioner's motion for a neurological expert to assist him in proving his present incompetency.  This Court expanded the COA to include a third issue: "[w]hether Petitioner received ineffective assistance of counsel during the penalty phase, as a result of his trial attorney's failure to properly investigate and prepare for this part of the trial, as well as the failure to present mitigation evidence."  After careful review and oral argument, we affirm.

## I.  BACKGROUND

In December 1992, a Dade County, Florida grand jury indicted Mr. Connor on four counts: (1) first degree murder of Lawrence Goodine; (2) first degree murder of Jessica Goodine; (3) kidnapping Jessica; and (4) burglary with assault and battery of Lawrence.  In 1998, a Florida jury convicted Mr. Connor as charged. Connor v. State, 803 So. 2d 598, 604 (Fla. 2001) (Connor I).  The brutal facts and circumstances surrounding Mr. Connor's crime and establishing his guilt, not contested here, are detailed in the Florida Supreme Court's direct appeal opinion affirming his convictions and sentence of death.  See id. at 601–04.  Here we will focus on those facts most relevant to the issues identified in the COA.

A.    Pretrial Competency Hearings in 1996 and 1998

2

Prior to trial, the state trial court conducted two separate competency hearings and found that Mr. Connor was competent to stand trial. Connor I, 803 So. 2d at 604. The first pretrial competency hearing was held in 1996 after trial counsel announced that three defense experts, including psychologist Bill Mosman and neuropsychologist Hyman Eisenstein, had found Mr. Connor to be incompetent. The trial court appointed psychiatrist Sanford Jacobson and psychologist Lazaro Garcia to evaluate Mr. Connor. The trial court then conducted the first competency hearing at which time Drs. Mosman, Jacobson, Eisenstein, and Garcia testified. Drs. Mosman and Eisenstein testified that Mr. Connor was incompetent while Drs. Jacobson and Garcia testified that he was competent. On June 10, 1996, at the conclusion of this hearing, the trial court found Mr. Connor was competent to stand trial.

Mr. Connor's case was first set to go to trial on June 19, 1997. But before jury selection was completed, Mr. Connor's counsel informed the state that he had doubts about his client's competency. In turn, on June 24, 1997, the state raised the issue of Mr. Connor's competency and the trial court dismissed the venire and appointed neuropsychologist Jane Ansley, psychiatrist Edward Herrera, and psychologist Eli Levy to evaluate Mr. Connor for competency. A competency hearing was held with these witnesses on January 20, 1998, and Drs. Levy,

3

Herrera, and Ansley all testified that Mr. Connor was competent.  Once again, the state trial court determined that Mr. Connor was competent to stand trial.

> B.    Trial and Direct Appeal

Mr. Connor's trial began in January 1998.  The state presented evidence that Mr. Connor bludgeoned Lawrence Goodine to death with a chair leg and then dumped his body in the woods.  Connor I, 803 So. 2d at 602–03.  There was also evidence that Mr. Connor kidnapped and strangled Jessica, Mr. Goodine's 10-year old daughter.  Id. at 603–04.  Police found Jessica's body wedged between a bed and a wall in a cottage on Mr. Connor's property, and Mr. Goodine's blood on Mr. Connor's clothes and in his car.  Id. at 603.  Mr. Connor testified in his own defense during the guilt phase of the trial, and claimed that the "State planted the evidence and Jessica's body in his house."  Id. at 604.  The jury convicted Mr. Connor as charged.  Id.

During the penalty phase, the medical examiner testified that the physical evidence showed Jessica Goodine struggled before she was choked to death and would have experienced panic and fear of impending death.  The defense presented the testimony of several witnesses, including Mr. Connor's immediate family members, two correctional officers, two psychologists (Dr. Eisenstein and Dr. Mosman), and Mr. Connor himself.  In rebuttal, the state presented the testimony of psychologist Lazaro Garcia who had examined Mr. Connor for competency on

4

four separate occasions during 1996.  After hearing the penalty phase evidence, the jury recommended death by an eight-to-four vote for the killing of Jessica Goodine and life for the killing of Lawrence Goodine.  Id. at 604.

The trial court sentenced Mr. Connor to death, finding five statutory aggravating circumstances applied to Jessica Goodine's murder: (1) the defendant had a previous capital felony conviction (murder of Lawrence); (2) the murder was committed while the defendant was engaged in the commission of a kidnapping; (3) the murder was committed to avoid arrest; (4) the murder was heinous, atrocious, or cruel; and (5) the murder was cold, calculated, and premeditated.  See id. at 604.  Although the trial court did not find any statutory mitigation,[1] it did find the nonstatutory mitigating circumstance that Mr. Connor suffered from mental illness at the time of the offense, which it gave "substantial weight."[2]  Id.  The trial court also found the following nonstatutory mitigators which it gave small or

---

[1] The trial court found that Mr. Connor did not establish, as a statutory mitigating circumstance, that he murdered Jessica while having (1) an extreme mental or emotional disturbance or (2) an impaired capacity to appreciate or conform to the requirements of the law.  See Connor I, 893 So. 2d at 611.

[2] At the request of trial counsel, and with Mr. Connor's consent, the state trial court considered all psychological reports and testimony, including pretrial competency proceedings, in determining Mr. Connor's sentence.  The court noted that "Mr. Connor underwent literally hundreds of hours of tests by numerous psychiatrists and psychologists.  Based on this testing and Mr. Connor's actions in court, the trial court concluded it was "reasonably convinced that [Mr. Connor] suffers from some type of organic brain syndrome and paranoia" and that Mr. Connor "is seriously troubled."  The trial court found that Mr. Connor's mental illness was not of "such a severity that it interfered with Mr. Connor's ability to perceive events, or to coldly plan and carry out his murder of Jessica."  Connor I, 803 So. 2d at 611.

5

little weight:  (1) he was a good father; (2) he will die in prison if given a life sentence; and (3) he had no disciplinary problems in prison.  Id.  The trial court concluded the aggravating circumstances outweighed the mitigating ones.  See id.

On direct appeal, Mr. Connor raised six claims, one relating to a motion to suppress and five relating to his death sentence.[3]  Id. at 604.  The Florida Supreme Court struck the avoid-arrest aggravator, but affirmed Mr. Connor's convictions and death sentence.  Id. at 612–13.  Despite the invalid aggravator, the court concluded beyond a reasonable doubt that the error did not affect the sentence because the four remaining aggravating circumstances supported a death sentence based on the circumstances of the case.  Id. at 610–12.  The United States Supreme Court denied certiorari review.  Connor v. State, 535 U.S. 1103, 122 S. Ct. 2308 (2002).

C.    State Postconviction Proceedings and Third Competency Hearing

In 2003 Mr. Connor filed, through newly appointed counsel Israel J. Encinosa, a Florida Rule of Criminal Procedure 3.851 motion for postconviction

---

[3]  Mr. Connor presented the following six claims in his direct appeal:

> (1) the trial court erred in denying Connor's motion to suppress evidence; (2) the trial court erred in finding the avoid arrest aggravator; (3) the trial court erred in finding [the murder was cold, calculated and premeditated]; (4) the trial court erred in rejecting the statutory mitigators of extreme emotional disturbance and impaired capacity to appreciate the criminality of conduct; (5) the trial court erred in rejecting the statutory mitigator of no significant criminal history; and (6) the sentence of death is disproportionate.

Connor I, 803 So. 2d at 604.

6

relief.[4]  Connor v. State, 979 So. 2d 852, 857 (Fla. 2007, as clarified April 10,

2008) (Connor II).  After a Huff hearing,[5] the state postconviction court granted

Mr. Connor an evidentiary hearing on his claim that trial counsel was ineffective

for failing to investigate and present evidence of Mr. Connor's childhood as

mitigation during the penalty phase.

Prior to the evidentiary hearing, postconviction counsel Encinosa filed an

emergency motion seeking to have Mr. Connor evaluated for competency.  The

postconviction trial court appointed Dr. Ansley to conduct the evaluation.  The

court held a competency hearing on February 18, 2004, which was the date the

---

[4]  In the later part of 2003, Mr. Connor filed an Amended Rule 3.851 petition raising the
following fifteen claims: (1) appellate counsel failed to raise the issue that there were only five
African-Americans in the jury panel; (2) trial counsel failed to object to the prosecutor's
suggestion that Mr. Connor had a criminal history, and appellate counsel failed to raise the error;
(3) trial counsel failed to move to strike the jury panel after the jury heard a highly inflammatory
remark about Fidel Castro, and appellate counsel failed to raise the error; (4) trial counsel failed
to object when the prosecutor told the jury that they could vote for death or life in prison, and
appellate counsel failed to raise the error; (5) the trial court improperly used an example
involving a mercy killing during voir dire, and appellate counsel failed to raise the error; (6) the
prosecutor made highly inflammatory and false remarks concerning the victim, and appellate
counsel failed to raise the issue; (7) Mr. Connor's right to be present at all stages of the trial was
violated, and appellate counsel failed to raise the issue; (8) Mr. Connor's Confrontation Clause
rights were violated, and appellate counsel failed to raise the issue; (9) Mr. Connor's right to
remain silent was violated when improper comments were made at trial about him having
exercised his right to remain silent; (10) one crime scene fingerprint was never identified and
trial counsel made no attempt to identify it; (11) there were per se conflicts of interest between
Mr. Connor and his trial counsel, and appellate counsel failed to raise the error; (12) ineffective
assistance of counsel during the guilt phase; (13) ineffective assistance of counsel during the
penalty phase; (14) Florida's sentencing scheme is in violation of Ring v. Arizona, 536 U.S. 584,
122 S. Ct. 2428 (2002); and (15) Mr. Connor's death sentence violates the Florida and U.S.
Constitutions because Petitioner is mentally retarded.

[5]  Under Huff v. State, 622 So. 2d 982 (Fla. 1993), a Florida trial court must hear oral argument
on a capital postconviction motion before determining which claims warrant an evidentiary
hearing. Id. at 983.

7

evidentiary hearing had been scheduled to begin.  Dr. Eisenstein, a neuropsychologist, testified for the defense and reaffirmed his opinion that Mr. Connor was not presently competent to proceed and assist his attorneys because of his deteriorating condition.  Neuropsychologist Ansley testified that she had evaluated Mr. Connor the day before the competency hearing.  Dr. Ansley concluded that Mr. Connor was competent, had adequate recall of details, and would not have problems presenting pertinent facts to his attorney.  Based upon the testimony of Drs. Eisenstein and Ansley, as well as the postconviction trial court's personal observations of Mr. Connor in the courtroom, the court determined that Mr. Connor was competent to proceed.  Further, the postconviction trial court found that Mr. Connor was as competent then as he had been at trial, and that Connor understood the proceeding and was able to aid and assist his counsel.

After finding Mr. Connor was competent to proceed, the postconviction court immediately began the evidentiary hearing on the merits of Mr. Connor's penalty phase ineffective assistance of counsel claim.  Mr. Connor presented the testimony of Dr. Eisenstein, Krincrecess Connor (Mr. Connor's cousin), Garla and Erica Connor (Mr. Connor's daughters), and Dorothy Connor (Mr. Connor's wife).  The state called Mr. Connor's trial counsel, Eugene Zenobi, and psychologist Bill Mosman, who had testified for Mr. Connor during the penalty phase.

8

Following the state postconviction evidentiary hearing, the postconviction trial court entered a written order denying all of Mr. Connor's postconviction claims. With respect to Mr. Connor's penalty phase ineffective assistance of counsel claim, the postconviction court's order denying relief noted that trial counsel Zenobi testified that he "did not find any significant evidence of [Mr. Connor] being abused as a child." Additionally, the postconviction court observed that while trial counsel suspected Mr. Connor might have been abused as a child, trial counsel was reluctant to use child abuse as a defense because: (1) Mr. Connor's offense involved the death of a child; (2) trial counsel believed it would have been difficult to show a link between Mr. Connor's offense and his child abuse because Mr. Connor was an older man; (3) trial counsel wanted the jury to concentrate on Mr. Connor's mental deficiencies and did not want his mental health mitigation diluted with a dangerous issue; and (4) finally, trial counsel was concerned about opening the door to harmful evidence about Mr. Connor's abuse of his own children. Trial counsel also discussed this strategy with Dr. Mosman, one of Mr. Connor's mitigation experts. On this record, the state postconviction court concluded:

> The failure to present testimony of the Defendant's abuse as a child was clearly a tactical decision, which was supported by Dr. Mossman [sic]. Counsel was not ineffective for failing to present evidence of alleged child abuse, which was a well reasoned tactical decision.
> . . . .

9

It is clear trial counsel did his job.  He hired an investigator. . . . He had three children and the Defendant's wife testify.  He called mental health experts and correctional officers [to] testify on Defendant's behalf.  Defendant has not met the prejudice prong of Strickland . . . .

Mr. Connor appealed the denial of postconviction relief to the Florida Supreme Court, raising fourteen claims, including his penalty phase ineffective assistance of counsel claim.[6]  See Connor II, 979 So. 2d at 857–58.  The Florida Supreme Court unanimously affirmed the denial of Mr. Connor's motion for postconviction relief.  Id. at 870–71.  After correctly identifying Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), as the governing standard and quoting Strickland's deficient performance and prejudice prongs, Connor II, 979 So. 2d at 858, the Florida Supreme Court concluded that "[t]he record supports a

---

[6] Mr. Connor raised these claims in his postconviction appeal to the Florida Supreme Court: (1) trial counsel failed to object to the prosecutor's suggestion that Mr. Connor had a criminal history, and appellate counsel failed to raise the error; (2) Mr. Connor's Confrontation Clause rights were violated, and appellate counsel failed to raise the issue; (3) trial counsel failed to move to strike the jury panel after the jury heard a highly inflammatory remark about Fidel Castro, and appellate counsel failed to raise the error; (4) ineffective assistance of trial and appellate counsel for failing to object to and raise the issue of the trial court's improper comments to the jury panel; (5) trial court violated Mr. Connor's right to be present at all stages of the trial; (6) trial court violated Mr. Connor's right to remain silent when it allowed law enforcement witnesses to testify about his silence; (7) right to counsel violated because trial counsel had an actual conflict of interest; (8) ineffective assistance of counsel during the guilt phase; (9) ineffective assistance of counsel during the penalty phase caused by trial counsel's failure to properly prepare for the penalty phase and failure to investigate and present mitigating evidence; (10) Mr. Connor's death sentence was imposed in violation of Ring, 536 U.S. 584, 122 S. Ct. 242; (11) Mr. Connor's death sentence violates the Eighth and Fourteenth Amendments; (12) Mr. Connor's death sentence violates Florida's constitutional prohibition against cruel and unusual punishment; (13) the postconviction trial court erred when it denied most of the issues without holding an evidentiary hearing; (14) the cumulative substantive and procedural errors during Mr. Connor's trial deprived him of a fundamentally fair trial.  The Florida Supreme Court treated Mr. Connor's assertion of appellate ineffective assistance of counsel as "a claim for habeas relief."  Connor II, 979 So. 2d at 858.

10

finding of competent and professional performance." Id. at 865.  On this issue, the

Florida Supreme Court made findings of fact and reasoned, in part:

> Trial counsel specifically considered and rejected the presentation of debatable evidence suggesting that Connor committed the crime because he had been physically abused decades earlier. Counsel undertook a deliberate and reasonable strategy to present positive family life mitigating evidence and mental health mitigating evidence, instead of a strategy that would have included abuse of the defendant and abuse by the defendant.  Based on the circumstances of this case, we cannot say that our confidence in this case is undermined because counsel chose not to present evidence that was inconsistent with the evidence that was presented.

Id. at 866.

> D.     Federal Habeas Corpus Proceedings

Israel Encinosa, still acting as appointed counsel for Mr. Connor, filed Mr.

Connor's first counseled petition for writ of habeas corpus in federal court on

November 19, 2007.[7]  Mr. Encinosa made no assertion that Mr. Connor was

incompetent, although a month later Mr. Encinosa moved for the appointment of

---

[7]  In August 2003, Mr. Connor filed a pro se federal habeas corpus petition while his state postconviction motion was still pending in the state postconviction trial court.  The District Court dismissed Mr. Connor's pro se federal petition in December 2003, without prejudice, for failure to exhaust state remedies.  In June 2004, while Mr. Connor's state postconviction appeal was pending in the Florida Supreme Court, Mr. Connor sent the District Court a series of letters, which the District Court originally treated as a federal habeas petition and instructed Mr. Connor to submit a petition on the court's approved form.  The District Court later determined that Mr. Connor's letters should not have been construed as a habeas petition and dismissed the case.  In doing so, the court stated that once Mr. Connor's state proceedings were concluded he could file a federal petition without having to comply with the specified conditions for second or successive petitions in 28 U.S.C. § 2244(b)(2).

11

new counsel.[8]  Mr. Connor, again through Mr. Encinosa, filed a second federal

petition on April 14, 2008, four days after the Florida Supreme Court granted the

state's motion for clarification and issued a slightly revised opinion.[9]  See Connor

II, 979 So. 2d at 852.  As with the original federal petition, Mr. Encinosa again

made no assertion that Mr. Connor was incompetent.

---

[8]  On December 13, 2007, just a few weeks after filing Mr. Connor's federal petition, Mr. Encinosa filed a motion requesting that the District Court appoint a new attorney to represent Mr. Connor on his petition for federal habeas corpus relief.  The motion was denied on April 16, 2008 because Mr. Encinosa had been appointed by the state circuit court.  Mr. Connor was directed to apply to the state court for substitution of counsel.  On August 13, 2008, the state court granted Mr. Encinosa's motion to withdraw and appointed attorney David S. Molansky. On September 28, 2008, Mr. Molansky filed his notice of appearance for Mr. Connor in the District Court.  Mr. Molansky then filed a status report on February 16, 2009 in the District Court representing that he had been appointed to represent Mr. Connor and that he had acquired the files of former counsel and was working on the case.  Almost two months later, Mr. Molansky filed a motion to be appointed Mr. Connor's counsel under the Criminal Justice Act.

[9]  Mr. Connor's second federal petition, filed on April 14, 2008, is almost identical to his first, filed on November 19, 2007, except that the date of the Florida Supreme Court's opinion affirming the denial of postconviction relief is changed to reflect that court's clarification of its opinion issued April 10, 2008.  The amended petition raised the following fourteen claims: (1) & (2) Confrontation Clause violation by introduction of hearsay and ineffective assistance of appellate counsel for failure to raise the issue on direct appeal; (3) ineffective assistance of trial and appellate counsel for failure to move to strike the jury panel; (4) ineffective assistance of trial and appellate counsel for failure to object to the trial court's comments during voir dire; (5) violation of Mr. Connor's right to be present during all proceedings when the trial court conducted an ex parte proceeding with the jury panel without Mr. Connor's presence; (6) violation of Mr. Connor's right to remain silent; (7) ineffective assistance of counsel caused by trial counsel's actual conflict of interest; (8) ineffective assistance of counsel during the guilt phase; (9) ineffective assistance of counsel during the penalty phase for failing to adequately prepare, investigate, and present mitigation evidence; (10) Mr. Connor's death sentence was obtained in violation of Ring, 536 U.S. 584, 122 S. Ct. 2428; (11) Mr. Connor's death sentence violates the Eighth and Fourteenth Amendments to the United States Constitution; (12) Mr. Connor's death sentence violates the Florida Constitution's prohibition against cruel and unusual punishment; (13) the state postconviction trial court erred by denying most of Mr. Connor's claims without an evidentiary hearing; and (14) the cumulative errors during Mr. Connor's trial denied him a fair trial.

12

The District Court appointed David Molansky to be Mr. Connor's new federal habeas counsel on April 27, 2009.  In June 2009, Mr. Molansky filed a motion for the appointment of a neuropsychologist and a mitigation expert.  On July 13, 2009, Mr. Molansky filed a motion to have Mr. Connor evaluated for competency, a competency hearing, and for a stay of the proceedings pending a determination of whether Mr. Connor was competent.  Mr. Molansky said that he had met with Mr. Connor on December 30, 2008 and that Mr. Connor "was unable to provide any meaningful assistance [to counsel], in litigating the pending petition, or providing assistance to amend the petition."  Mr. Molansky also stated that Mr. Connor "suffers from frontal lobe damage," among other things, and that counsel had a "good faith belief" that Mr. Connor "may not be competent to proceed in a § 2254 action" and "may not be competent to be executed."  Mr. Molansky argued in support of his motion that Mr. Connor's statutory right to counsel in federal habeas proceedings "encompasse[d] 'meaningful assistance' which 'depends in substantial measure on the petitioner's ability to communicate with [counsel],'" and cited McFarland v. Scott, 512 U.S. 849, 114 S. Ct. 2568 (1994) and 21 U.S.C. § 848(q)(4)(B).  Beyond that, Mr. Molansky sought funds to determine Mr. Connor's competence both for the § 2254 proceedings and to be executed.

13

In response, the state argued that there was no right to be competent to proceed with a federal habeas petition and no basis to recognize such a right here given the status of the case. Specifically, the state took the position that since Mr. Connor's federal petition had been filed more than a year and a half earlier, the state had filed its response to the petition, Mr. Connor could not amend his petition under Federal Rule of Civil Procedure 15(a)(3), and because the Antiterrorism and Effective Death Penalty Act's [AEDPA] statute of limitations had expired, Mr. Connor could not add any new claims. The state also argued that Mr. Connor's competency to be executed claim was not ripe because his execution was not imminent.

After further briefing, on November 6, 2009, the District Court entered an order granting Mr. Connor's request for a neuropsychologist for the purpose of evaluating Mr. Connor's competency to proceed with the habeas proceeding. The court denied his request for a competency hearing without prejudice, and declined to appoint a mitigation expert. The District Court relied upon its review of the state court proceedings, including the state court's three determinations that Mr. Connor was competent, and three pieces of new information: (1) Dr. Hyman Eisenstein's representations to Mr. Molansky about Mr. Connor's frontal lobe damage and mental deficiencies; (2) Mr. Molansky's representations that Mr. Connor was not able to assist with his case and "exhibits sever[e] signs of

14

paranoia"; and (3) letters Mr. Connor had sent to the District Court "that [did] not advance his claims, but [did] exhibit the 'paranoia' recognized by" Mr. Molansky.[10]  Based on this evidence, the District Court concluded Mr. Molansky had not "put forth sufficient evidence to warrant a hearing on competence," but had "made a sufficient showing that the appointment of a neuropsychologist is reasonably necessary to advance his claim of lack of competence."

In January 2010, Mr. Molansky filed a competency report co-authored by Dr. Eisenstein and Dr. Esther Selevan which concluded that Mr. Connor was "not competent to proceed" and "[i]n all likelihood . . . will not be restored to competency" because of "the longstanding chronic nature of his psychiatric illness, atypical dementia and cognitive deterioration."  Additionally, the doctors' report diagnosed Mr. Connor with "[p]aranoid [s]chizophrenia, includ[ing] prosopagnosia, a denial of mental illness" and stated, among other things, that Mr. Connor: (1) had "fixed psychotic delusions and distortion of reality"; (2) "would not benefit from involuntary hospitalization to ameliorate his psychitatric condition and restore competency;" (3) "demonstrated ongoing decline in cognitive functioning, especially executive functioning, which includes decision making,

---

[10]  The District Court indicated that the record for the federal habeas proceedings contained writings filed by Mr. Connor which it characterized as "incoherent . . . ramble about various nonsensical issues," such as Mr. Connor's "most personal anatomy . . . various conspiracies against" Mr. Connor, including "that testimony at his trial was purchased for one million dollars in cash, gold and jewelry that was stolen from him, and that someone removed photographs of his body from his prison medical file that prove that he was dead at one time."

15

judgment, reasoning, and abstraction skills" based on a neuropsychological evaluation; and (4) had "profoundly impaired" judgment and reasoning. Dr. Eisenstein and Dr. Selevan recommended "a comprehensive [n]eurological work up including neurodiagnostic imaging, such as MRI and PET scanning, to delineate the nature of [Mr. Connor's] cortical and subcortical impairments."

At a January 11, 2010 status conference, the state objected to Mr. Connor being evaluated further, but requested alternatively that, if the District Court were to order it, the court order "an independent evaluation, not an evaluator for the defense as Dr. Eisenstein has been." Mr. Molansky agreed. The District Court indicated it would approve funds for further examination, including an MRI, once Mr. Molansky filed his request.

Four days later, Mr. Molansky filed a notice of stipulation stating the parties had agreed to neuropsychologist Tannahill Glen as an examining expert and Mr. Molansky was "in the process of arranging an MRI."[11] Mr. Molansky then renewed his motion for a competency hearing. Notably, Mr. Molansky told the court that Mr. Connor's "[a]ssistance . . . is required to determine the issues he wishes to appeal" or whether he "may wish to withdraw all further appeals," and that Mr. Connor "must be competent to make these important decisions." After Mr. Molansky filed his motion for funds for an expert and for an MRI on January

---

[11] The state acknowledged that it provided Mr. Molansky with Dr. Glen's name, but denied it ever stipulated to her appointment.

16

18, 2010, the State opposed that motion as well as Mr. Molansky's renewed motion for a competency hearing.

On February 11, 2010, Mr. Molansky filed Dr. Glen's report. Dr. Glen had reviewed Dr. Eisenstein's and Dr. Selevan's neuropsychological evaluation of Mr. Connor and found it "a valid, reliable and current estimate of Mr. Connor's capacity from a neuropsychiatric perspective." Dr. Glen agreed (1) with Drs. Eisenstein's and Selevan's conclusions based on the information in their report and (2) that an MRI was needed to determine if Mr. Connor had a progressive condition.

On February 26, 2010, the District Court granted Mr. Molansky's motion for funds to pay for Dr. Glen's evaluation and an MRI. On March 25, 2010, Mr. Molansky advised the District Court that the MRI could not be performed without a referral from a medical doctor (not a neuropsychologist like Dr. Glen). Thus, Mr. Molansky moved for funds to hire a neurologist to provide the MRI referral, sedate Mr. Connor prior to the scan, and interpret the results.

On May 18, 2010, the District Court denied Mr. Molansky's motion for funds for a neurologist to obtain the MRI. The court concluded: (1) Mr. Connor's federal claims were "materially the same as those filed in state court"; (2) Mr. Connor had been found competent in state court at the time he alleged the claims in state court that were now being re-raised in federal court; and (3) "[b]ecause [Mr.

17

Connor] was competent when making the claims in the first place—when they were presented to the state habeas court—there is no reason for [him] to be competent when presenting the same claims to the federal court." The District Court did not address Mr. Molansky's claims that Mr. Connor was incompetent even to make the threshold decision about whether to pursue his claims or to withdraw them.

The same day the District Court denied Mr. Molansky's request for expert funding, it also denied Mr. Connor's amended habeas petition in a comprehensive written order without an evidentiary hearing.[12] The District Court later granted Mr. Connor a certificate of appealability on the issue of whether the court erred by denying Mr. Connor's motion for a competency hearing and stay pending determination of competency, as well as the corresponding motion for an additional medical expert. As we've already noted, this Court expanded the certificate of appealibility to include Mr. Connor's claim that his counsel was ineffective during the penalty phase of his trial.

## II.  STANDARDS OF REVIEW

The determination of a legal right to be competent in federal habeas corpus proceedings is question of law that we review de novo. Cf. United States v.Webb,

---

[12] The District Court adjudicated Mr. Connor's amended petition (numerically second petition) that was filed on April 14, 2008. In January 2010, Mr. Molansky filed two motions to amend the petition and two amended petitions. On April 7, 2010, the District Court issued an order denying amendment of the petition. The same order adopted the second petition as the operative petition.

565 F.3d 789, 793 (11th Cir. 2009) (holding the existence of a Sixth Amendment right to appointment of counsel in a motion to reduce sentence under 18 U.S.C. § 3582(c) is a question of law reviewed de novo).

"[T]he decision to grant a stay, like the decision to grant an evidentiary hearing, is 'generally left to the sound discretion of district courts.'" Ryan v. Gonzales, ___ U.S. ___, ___, 133 S. Ct. 696, 708 (2013) (quoting Schriro v. Landrigran, 550 U.S. 465, 473, 127 S. Ct. 1933, 1939 (2007)).[13]  "AEDPA does not deprive district courts of that authority, but it does circumscribe their discretion." Rhines v. Weber, 544 U.S. 269, 276, 125 S. Ct. 1528, 1534 (2005) (citation omitted).  Any stay a District Court grants should be compatible with the goals of AEDPA, including the goal of "reduc[ing] delays in the execution of state and federal criminal sentences, particularly in capital cases." Id. (internal quotation marks omitted).  Similarly, a District Court's decision to grant or deny

---

[13] We are talking about whether a court, in the exercise of its inherent power to control a case that was filed in or removed to that court, may grant a stay or suspension of the proceedings in that court. See, e.g., Clinton v. Jones, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650 (1997) (discussing district court's "broad discretion to stay proceedings as an incident to its power to control its own docket").  We are not talking about a court granting a stay or preliminary injunction to halt proceedings in another court or to delay or prevent another court's judgment from being carried out.  Different rules apply in those circumstances. See, e.g., Hill v. McDonough, 547 U.S. 573, 584, 126 S. Ct. 2096, 2104 (2006) (holding that a stay of execution should not be entered unless the petitioner has satisfied "all of the requirements for a stay, including a showing of a significant possibility of success on the merits"); Powell v. Thomas, 641 F.3d 1255, 1257 (11th Cir. 2011) (per curiam) (providing that a federal court may grant a stay of execution under 28 U.S.C. § 2251 "only if the moving party shows that: (1) he has a substantial likelihood of success on the merits; (2) he will suffer irreparable injury unless the injunction issues; (3) the stay would not substantially harm the other litigant; and (4) if issued, the injunction would not be adverse to the public interest").

19

funds for an expert witness is reviewed for abuse of discretion. See Gary v. Hall, 558 F.3d 1229, 1250 (11th Cir. 2009).

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact de novo, and findings of fact for clear error." Grossman v. McDonough, 466 F.3d 1325, 1335 (11th Cir. 2006). "An ineffective assistance of counsel claim is a mixed question of law and fact subject to de novo review." McNair v. Campbell, 416 F.3d 1291, 1297 (11th Cir. 2005). But we are "highly deferential" to the state court's decision on the merits of a claim. See Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1398 (2011); see also Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 786 (2011). If a state court has adjudicated the merits of a claim, we may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A federal court must "presume that a state court finding of competency is correct." Sanchez-Velasco v. Sec'y, Dep't of Corr., 287 F.3d 1015, 1030 (11th Cir. 2002).

20

## III.  DISCUSSION

A.    Competency Hearing and Expert in Federal Habeas Proceedings

This Court has never answered the question of whether there is a right to be competent in § 2254 proceedings so that petitioners may assist counsel in making arguments, factually or legally.[14]  But the United States Supreme Court recently addressed this very issue in Ryan v. Gonzales, 133 S. Ct. 696.   For the reasons we discuss below, Gonzales compels the conclusion that in light of the procedural posture of Mr. Connor's case, the District Court did not abuse its discretion when it denied Mr. Connor's request for a competency hearing; expert funds to investigate his current competency; and a stay of his federal habeas proceedings.

---

[14]  In Ferguson v. Sec'y, Dep't of Corr., 580 F.3d 1183 (11th Cir. 2009), we addressed a claim—similar to the one raised by Mr. Connor's counsel in this appeal—that a § 2254 petitioner's paranoid schizophrenia rendered him incompetent to proceed with his federal habeas case because he could not provide full assistance to his attorneys.  Id. at 1221–22.  But in Ferguson, unlike here, the District Court held an evidentiary hearing on the petitioner's competence to proceed and found him competent, and the finding of competence was not clearly erroneous.  Id. Thus, we did not need to reach the issue of whether a right existed to be competent to assist one's counsel in federal habeas, because even if such a right existed, it was not violated.  See id.  We also note that the petitioner in Ferguson, unlike Mr. Connor, filed his § 2254 petition "along with his mother as next friend."  Id. at 1192.

Our cases do establish that a competent petitioner has a right to decide whether to proceed with or discontinue his federal habeas proceedings.  See, e.g., Henderson v. Campbell, 353 F.3d 880, 893–94  (11th Cir. 2003).  Where a federal habeas petitioner is not competent to make decisions on his own behalf, a "next friend" may be appointed to "pursue[] the cause on behalf of the detained person, who remains the real party in interest."  Whitmore v. Arkansas, 495 U.S. 149, 162–63, 110 S. Ct. 1717, 1726–27 (1990); see also 28 U.S.C. § 2242.  "'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."  Whitmore, 495 U.S. at 163, 110 S. Ct. at 1727; accord Sanchez-Velasco, 287 F.3d at 1025.  Because the issues related to the appointment of a next friend are beyond the scope of the COA granted in this case, we express no opinion on how the request for a next friend, or the existence of a next friend, might affect the issues presented by Mr. Connor's case.

21

In Gonzales, the Supreme Court granted certiorari to determine whether the federal statute guaranteeing "federal habeas petitioners on death row the right to federally-funded counsel," 18 U.S.C. § 3599, and the federal statute governing competency proceedings for federal criminal defendants, 18 U.S.C § 4241, "provide[] a statutory right to competence in federal habeas proceedings." Id. at 701–02. Gonzales considered two cases from the United States Court of Appeals in which the Ninth and Sixth Circuits had "concluded that death row inmates pursuing federal habeas are entitled to a suspension of proceedings when found incompetent." Id. at 702; see also id. at 701– 02  (citing In re Gonzales, 623 F.3d 1242 (9th Cir. 2010) and Carter v. Bradshaw, 644 F.3d 329 (6th Cir. 2011)).  "The Ninth Circuit located this right in § 3599, while the Sixth Circuit located it in § 4241." Id. at 702.  The Supreme Court held that "[n]either section provides such a right." Id.

To understand how Gonzales dictates the outcome in Mr. Connor's case, it is necessary to understand the procedural posture and underlying claims of the two capital federal habeas petitioners, Ernest Valencia Gonzales and Sean Carter, whose cases were before the Supreme Court.  We describe Mr. Gonzales's case first.

After exhausting his state postconviction remedies in Arizona, Mr. Gonzales filed a § 2254 petition in District Court on November 15, 1999. Id. at 700.  "While

the petition was pending, Gonzales' appointed counsel moved to stay the proceedings, contending that Gonzales was no longer capable of rationally communicating with or assisting counsel." Id.  Mr. Gonzales relied on the Ninth Circuit precedent in Rohan v. Woodford, 334 F.3d 803, 813 (9th Cir. 2003) (holding that the federal statute guaranteeing state capital prisoners a right to counsel in federal habeas proceedings, 21 U.S.C. § 848(q)(4)(B) (2000 ed.) (now codified at 18 U.S.C. § 3599(a)(2)), could not "be faithfully enforced unless courts ensure that a petitioner is competent").  In Rohan, the Ninth Circuit had concluded that "where an incompetent capital habeas petitioner raises claims that could potentially benefit from his ability to communicate rationally, refusing to stay proceedings pending restoration of competence denies him his statutory right to assistance of counsel, whether or not counsel can identify with precision the information sought." Rohan, 334 F.3d at 819.

Mr. Gonzales's District Court relied upon Rohan to "den[y] a stay after concluding that the claims properly before it were record based or resolvable as a matter of law and thus would not benefit from Gonzales' input." Gonzales, 133 S. Ct. at 701. "The [district] court found it unnecessary to determine whether Gonzales was incompetent, though it did find that he possessed at least a limited capacity for rational communication." Id. (quotation marks omitted).  Mr. Gonzales then filed "an emergency petition for a writ of mandamus in the Ninth

Circuit." Id.  While his case was pending, the Ninth Circuit decided in another case that "habeas petitioners have a right to competence on appeal, even though appeals are entirely record based." Id. (citing Nash v. Ryan, 581 F.3d 1048, 1050 (9th Cir. 2009)).  "Applying Nash and Rohan, the [Ninth Circuit] granted the writ of mandamus, concluding that even though Gonzales' 'exhausted claims are record-based or legal in nature, he is entitled to a stay pending a competency determination' under 18 U.S.C. § 3599." Id. (quoting In re Gonzales, 623 F.3d at 1244).

After examining the text of § 3599, and considering the doctrinal distinctions between the right to counsel at trial under the Sixth Amendment and the right not be tried if incompetent under the Due Process Clause, the Supreme Court squarely rejected the Ninth Circuit's holding that the right to counsel in § 3599 created a right to be competent in federal habeas proceedings. Id. at 702–706.  The Supreme Court explained:

> We are not persuaded by the Ninth Circuit's assertion that a habeas petitioner's mental incompetency could 'eviscerate the statutory right to counsel' in federal habeas proceedings.  Given the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence.  Indeed, where a claim is 'adjudicated on the merits in State court proceedings,' 28 U.S.C. § 2254(d) (2006 ed.), counsel should, in most circumstances, be able to identify whether the 'adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

24

> determined by the Supreme Court of the United States,' § 2254(d)(1), without any evidence outside the record.

Id. at 704–05.[15]

Sean Carter's case was in a different procedural posture than Mr. Gonzales's.  After he exhausted his state court remedies in Ohio, Mr. Carter initiated his federal habeas corpus proceedings on March 19, 2002 in District Court.  Id. at 701.  "Carter eventually filed a third amended petition, along with a motion requesting a competency determination and a stay of the proceedings," which the District Court granted.  Id.  After psychiatric evaluations and a competency hearing, "the District Court found Carter incompetent to assist counsel."  Id.  The District Court applied the Ninth Circuit's Rohan test and determined that "Carter's assistance was required to develop four of his exhausted claims."  Id.  "[T]he court dismissed [Carter's] habeas petition without prejudice and prospectively tolled the statute of limitations."  Id.

The Sixth Circuit came to the same conclusion as the Ninth Circuit but found the statutory right to be competent during § 2254 proceedings to derive from

---

[15] As we noted, the Gonzales Court granted certiorari to decide whether there was a statutory right to be competent during federal habeas corpus proceedings.  The Supreme Court observed that the Ninth Circuit's decision in Rohan involved an assertion of a right to be competent in habeas proceedings that arises from the Due Process Clause, as well as the statutory right to counsel, and that the Ninth Circuit stated petitioner's due process claim "raised 'substantial' 'constitutional questions.'"  Gonzales, 133 S. Ct. at 703–04 (quoting Rohan, 334 F.3d at 814).  However, the Supreme Court rejected that notion, stating that "[t]he Ninth Circuit was simply incorrect in suggesting that, in [Gonzales's] case, there might be a constitutional concern."  Id.  Because we have come to the conclusion that Mr. Connor's case is similarly situated to Gonzales's case in all material respects, we cannot say that Mr. Connor's case raises constitutional due process concerns.

two sources: (1) 18 U.S.C. § 4241—which establishes procedures for the determination of mental competency to stand trial for federal criminal defendants; and (2) in part from the Supreme Court's decision in Rees v. Peyton, 384 U.S. 312, 86 S. Ct. 1505 (1966) (per curiam).  Gonzales, 133 S. Ct. at 701–02 (citing Carter, 644 F.3d at 332).  In Rees, the Supreme Court "held indefinitely a petition for certiorari after an incompetent capital inmate sought to withdraw his petition prior to [Supreme Court] review."  Id. at 702 n.1 (citing Rees, 384 U.S. at 313–14, 86 S. Ct. at 1506–07).  "By applying section 4241 to habeas actions," the Sixth Circuit held Rees "defines a statutory right for the petitioner to be competent enough to (1) understand the nature and consequences of the proceedings against him, and (2) assist properly in his defense."  Carter, 644 F.3d at 333.  The Sixth Circuit ordered that Carter's petition be stayed indefinitely "with respect to his ineffective assistance claims and any other claims that . . . require his assistance."  Id. at 337; see also Gonzales, 133 S. Ct. at 702.

The Supreme Court also disagreed with the Sixth Circuit's decision.  The Supreme Court explained that its decision in Rees "did not recognize a statutory right to competence in federal habeas proceedings," and indeed that § 4241 "does not even apply to such proceedings."  Id. at 706; see id. at 705–07.

After deciding that there is no statutory right to be competent in federal habeas proceedings, the Gonzales Court then considered whether a District Court

26

has "equitable power to stay proceedings when they determine that habeas petitioners are mentally incompetent." Id. at 707; see id. at 707–09. The Supreme Court reaffirmed that "[d]istrict courts . . . ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion." Id. at 708 (alteration in original) (quoting Rhines v. Weber, 544 U.S. 269, 276, 125 S. Ct. 1528, 1534 (2005) (citation omitted)). Further, both warden petitioners before the Court in Gonzales agreed that "AEDPA does not deprive district courts of [this] authority." Id. (alteration in original) (quoting Rhines, 544 U.S. at 276, 125 S. Ct. at 1534). But the Gonzales parties disagreed about the "types of situations in which a stay would be appropriate and about the permissible duration of a competency-based stay." Id. Significantly, for the purposes of resolving the stays at issue in Mr. Gonzales's and Mr. Carter's cases, the Court stated "it [was] unnecessary to determine the precise contours of the district court's discretion to issue stays," instead the Court "address[ed] only its outer limits."[16] Id.

With respect to Mr. Gonzales, the Supreme Court held that the District Court did not abuse its discretion in denying a stay "because a stay is not generally warranted when a petitioner raises only record-based claims subject to 28 U.S.C.

---

[16] The Supreme Court reaffirmed that the decision to grant a stay "is generally left to the sound discretion of district courts" stating that it does "not presume that district courts need unsolicited advice from [the Supreme Court] on how to manage their dockets." Id. (quotation marks omitted). We recognize this ourselves, so we do not attempt to define the "precise contours of the district court's discretion to issue stays" beyond the facts of Mr. Connor's case.

27

§ 2254(d)." Id.  The Court emphasized that the "District Court correctly found that all of Gonzales' properly exhausted claims were record based or resolvable as a matter of law, irrespective of Gonazales' competence." Id.  The Court explained "review of such claims 'is limited to the record that was before the state court that adjudicated the claim on the merits.'" Id. (quoting Pinholster, 131 S. Ct at 1398). Thus, "any evidence that a petitioner might have would be inadmissible." Id.

With regard to Mr. Carter, the Supreme Court noted in contrast that the District Court had "concluded that four of Carter's claims could potentially benefit from Carter's assistance." Id. at 708–09.  Because "three of these claims were adjudicated on the merits in state postconviction proceedings," the Supreme Court concluded they were subject to review under § 2254(d). Id. at 709.  Like Mr. Gonzales, "[a]ny extrarecord evidence that Carter might have concerning these claims would therefore be inadmissible." Id.  Carrying forward the same reasoning, then, the Court concluded these claims did not warrant a stay. Id.

However, the Supreme Court could not determine from the record whether Mr. Carter's fourth claim alleging ineffective assistance of appellate counsel was exhausted. Id. at 709 & n.16.  But even assuming this "claim was both unexhausted and not procedurally defaulted," the Court concluded "an indefinite stay would be inappropriate." Id.  This is because "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a

28

petitioner to delay the resolution of the federal proceedings." Id. (quoting Rhines, 544 U.S. at 277, 125 S. Ct. at 1534). "Without time limits [on stays], petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." Id. (alteration in original) (quoting Rhines, 544 U.S. at 277–78, 125 S. Ct. at 1535). Ultimately, because the District Court in Mr. Carter's case had deferred ruling on procedural default issues, the Supreme Court left the fourth claim for the District Court to resolve on remand. Id. at n.16. However, the Court constrained the District Court's discretion on remand in the following way:

> If a district court concludes that the petitioner's claim could substantially benefit from the petitioner's assistance, the district court should take into account the likelihood that the petitioner will regain competence in the foreseeable future. Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment.

Id. at 709.

In light of the Supreme Court's decision in Gonzales, we cannot say that the District Court abused its discretion when it denied Mr. Connor's request for a competency hearing, expert funds, and a stay of the federal proceedings. First, like Mr. Gonzales and Mr. Carter, Mr. Connor's request came long after he filed his federal petition. See id. at 700–01.

Second, like Mr. Gonzales, the District Court in Mr. Connor's case correctly found that all of Mr. Connor's properly exhausted federal habeas claims were record based or resolvable as a matter of law, without Mr. Connor's input. See id.

29

at 708.  Based on our independent review of the state court record we conclude that all of Mr. Connor's fourteen federal habeas claims were indeed exhausted in state court and either adjudicated on the merits, or procedurally defaulted, as evidenced by the Florida Supreme Court's opinion affirming the denial of postconviction relief.  See Connor II, 979 So. 2d at 858 n.1.

We emphasize that Mr. Connor's habeas petition raises only exhausted record-based claims subject to 28 U.S.C. § 2254(d), and his is not a case involving a claim that is both unexhausted and not procedurally defaulted.  Further, to the extent that Mr. Connor's federal claims are procedurally defaulted, he has neither shown cause and prejudice nor a miscarriage of justice to excuse his default.  See Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate . . . a fundamental miscarriage of justice.").  It is also worth noting that when Mr. Molansky attempted to amend Mr. Connor's federal petition in January 2010—long after Mr. Connor's initial petition had been filed on November 19, 2007, and amended on April 14, 2008—the District Court issued an order denying amendment of the petition under the relation back doctrine, the equitable tolling doctrine, the cause and prejudice doctrine, and the actual innocence doctrine.  This being the case, the

30

District Court's review of Mr. Connor's claims was limited to the claims and record that were before the state court that adjudicated his claims on the merits. See Gonzales, 133 S. Ct. at 708. "[A]ny evidence that [Mr. Connor] might have would be inadmissible." Id.

It should be plain from the scope of the issues on which Mr. Connor received a certificate of appealability that we do not decide whether the District Court would have abused its discretion in denying Mr. Connor's request for a competency hearing, funds for an expert to assist him, or a stay of execution to adjudicate a competency to be executed claim under Ford v. Wainwright, 477 U.S. 399, 410, 106 S. Ct. 2595, 2602 (1986) (holding that the Eighth Amendment prohibits a state from executing a prisoner who is insane). While the allegations concerning Mr. Connor's current competency, long psychiatric history, and deteriorating mental condition may not be relevant to the adjudication of the record-based claims in his petition now before us, these allegations would be relevant to a competency to be executed claim. We express no opinion on whether Mr. Connor would have a viable Ford claim. Mr. Connor's allegations concerning his competency to be executed are simply not now ripe for adjudication because the state has not set an execution date. See Panetti v. Quarterman, 551 U.S. 930, 945–47, 127 S. Ct. 2842, 2853–55 (2007).

B.    Penalty Phase Ineffective Assistance of Counsel

We now address Mr. Connor's claim that he was denied the effective assistance of counsel during his penalty phase.   The merits of Mr. Connor's penalty phase ineffective assistance of counsel claim are "squarely governed" by the Supreme Court's holding in Strickland, 466 U.S. 668, 104 S. Ct. 2052.  See Williams v. Taylor, 529 U.S. 362, 390, 120 S. Ct. 1495, 1511 (2000).  Under Strickland, Mr. Connor must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.

Mr. Connor's claim, as presented originally to the state habeas court, makes three points: (1) penalty phase counsel inadequately examined mental-health expert Dr. Eisenstein when the State asked about Connor's prior criminal behavior; (2) counsel failed to present a third mental-health expert, Dr. Jacobson; and (3) counsel failed to present as a background witness Connor's distant cousin, Krincrecess Connor, who could have bolstered the theory that Connor suffered childhood abuse and whose testimony could have been buttressed by other family members not presented by counsel.  Connor II, 979 So. 2d at 864–65.

As set out above, the Florida Supreme Court correctly identified Strickland as the governing standard and found that counsel's performance was neither deficient nor prejudicial.  See id. at 864–66.  Mr. Connor's ineffective assistance claim regarding Dr. Eisenstein failed because counsel unsuccessfully tried to

32

exclude use of Mr. Connor's past conduct and, failing that, argued in closing that Mr. Connor had never been convicted as a result of these accusations. Id. at 865. Mr. Connor's federal habeas counsel argues that trial counsel could have better used the accusations to show Connor's mental instability, but the fact that trial counsel chose a different tack was not deficient performance under Strickland. Id. at 865. Next, trial counsel's failure to present Dr. Jacobson's testimony in mitigation was not deficient because that testimony would have simply duplicated the testimony of two other mental health experts. Id. Finally, trial counsel's decision not to call Krincrecess Connor and to present, generally, testimony that Mr. Connor suffered childhood abuse and was himself severely abusive toward his own family was an acceptable penalty-phase strategy. Id. at 865–66. That testimony would have contradicted the evidence that was presented, which tended to humanize Connor. Counsel therefore acted reasonably to omit it. Id. at 866.

We have no reason to disturb the Florida Supreme Court's holding under the AEDPA standard of review. In this case, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable." Richter, 131 S. Ct. at 785. Both Strickland and AEDPA prescribe "highly deferential" review. Id. at 788 (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; Lindh v. Murphy, 521 U.S. 320, 333 n.7, 117 S. Ct. 2059, 2066 n.7 (1997)) (internal quotation marks omitted). "Where, as here, both apply, our 'review is doubly so.'"

33

Hunt v. Comm'r, Ala. Dep't of Corr., 666 F.3d 708, 721 (11th Cir. 2012) (quoting

Richter, 131 S. Ct. at 788) (internal quotation marks omitted).

This Court has said that Strickland does not require penalty-phase counsel to

present cumulative evidence in mitigation in order to render effective assistance.

See, e.g., Glock v. Moore, 195 F.3d 625, 636 (11th Cir. 1999).  And presenting

mitigation evidence to humanize a defendant, while excluding evidence that would

tend to have the opposite effect, may be a reasonable penalty-phase strategy.  See,

e.g., Bertolotti v. Dugger, 883 F.2d 1503, 1519 (11th Cir. 1989).  Perhaps most

importantly, as the Florida Supreme Court noted, Connor II, 979 So. 2d at 865–66,

Mr. Connor did not show how the alternate avenues his counsel might have taken

would have affected the outcome of the sentencing phase of his case.  He therefore

failed to present a successful Strickland claim, see 466 U.S. at 694, 104 S. Ct. at

2068 (explaining that the prejudice prong requires the petitioner to establish a

"reasonable probability that, but for counsel's . . . errors, the result of the

proceeding would have been different"); Schultz v. Wainwright, 701 F.2d 900, 901

(11th Cir. 1983) (per curiam) ("To obtain habeas relief based on ineffective

assistance of counsel, a petitioner must demonstrate prejudice to himself.").  The

Florida Supreme Court's conclusion in these respects was therefore reasonable

under Richter's doubly deferential standard of review.  See Hunt, 666 F.3d at 721

34

(quoting <u>Richter</u>, 131 S. Ct. at 788).  The District Court thus properly rejected Connor's ineffective assistance claim.

## IV.  CONCLUSION

For these reasons, we conclude the District Court did not abuse its discretion in denying Mr. Connor's request for a competency hearing, expert funds related to the issue of his competency, and stay pending a determination of his competency to proceed in his federal habeas corpus proceedings.  We affirm the District Court's denial of federal habeas corpus relief.

**AFFIRMED.**