[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14828
Non-Argument Calendar

_____

D.C. Docket No. 8:09-cv-00745-JDW-TGW


RANDALL BURCH,

Petitioner - Appellant,

versus

SECRETARY, DOC,
FLORIDA ATTORNEY GENERAL,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 23, 2013)

Before MARCUS, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Randall Burch, a Florida prisoner, appeals the district court's denial of his pro se petition for habeas corpus under 28 U.S.C. § 2254. Although Burch raised a number of issues in his habeas petition, we issued a certificate of appealability (COA) on the following issue only: "whether Mr. Burch's confession to law enforcement that was introduced at his trial was coerced and obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966) and Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880 (1981)." Burch v. Sec'y, Fla. Dep't of Corr., No. 12-14828 at 4 (11th Cir. Dec. 21, 2012) (order granting "a limited COA"). Upon further review of Burch's claim, we affirm the district court's denial of habeas relief.

## I.    BACKGROUND

The following facts are relevant to our disposition of Burch's appeal:[1] in August 2003, the Sarasota County Sheriff's Office began investigating the disappearance of Shane Patrick. In January 2004, Patrick's body was found and the story of its discovery was published in the local newspaper. The newspaper

---

[1] These facts are drawn from the state court record, including the trial court's order denying Burch's motion to suppress his statement. See 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."). Burch does not challenge the Florida courts' findings of fact. He does, however, include in his appellate brief two additional facts not presented to the Florida courts: specifically, that in addition to his lighter and keys, the Sheriff's detectives confiscated his wallet at the outset of his interview; and that during his smoking breaks, he was "'made' to sit on a specific bench." Because no evidence of these facts was presented to the state courts, we may not consider them in our analysis of his appeal. See Cullen v. Pinholster, ___ U.S. ___, ___, 131 S. Ct. 1388, 1400 (2011) ("[E]vidence introduced in federal court has no bearing on § 2254(d)(1) review.").

story indicated that Patrick's death was a homicide.  Either the same day that the story ran, or the next, Burch contacted his father and told him he wanted to speak to Sheriff's detectives.

Burch arrived at the Sheriff's Office between 9:00 and 9:30 p.m. on January 28, accompanied by his father, mother, and girlfriend.  Sherriff's Detectives Brewer and Valentino met Burch and his family in the lobby, and then escorted Burch back to the interview room alone.  Before entering the interview room, the detectives did a routine, "quick, nonintrusive patdown" to make sure that Burch did not have any weapons, and confiscated Burch's cigarettes and lighter.  The detectives returned these items to him later, when Burch took smoking breaks from his interview.

Immediately upon entering the interview room, Detective Brewer informed Burch that he was not under arrest, and that he had not "been charged or anything like that."  Then, to be "safe rather than sorry," Detective Brewer read Burch his Miranda[2] rights.

Burch was never handcuffed during his interview, and the detectives left their weapons in the locker outside the interview room.  Although one of the interview room's two doors was locked, Burch was not otherwise restrained.  Indeed, during the course of his interview, the detectives offered him food, a

---

[2]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

3

beverage, and smoking breaks, and twice asked whether he wanted to speak to his parents and girlfriend.  Burch took the detectives up on their offers, accepting a beverage, and twice taking breaks for a cigarette outside.  Detectives accompanied Burch on his smoking breaks.

Throughout the course of his conversation with the detectives, Burch never gave any indication that he did not wish to speak, and the detectives never confronted him with any evidence of guilt.  Indeed, despite recounting that he had "been told many times never to talk to a cop without an attorney present," Burch emphasized that "[n]obody's to blame but myself," and that he wanted "to talk," "to tell you guys absolutely everything," and "to get everything off my conscience."  Burch indicated that he was interested in a "plea agreement," and the detectives told him that plea agreements "can happen sometimes," but they never promised, or even implied that Burch would receive one.  Burch then confessed to killing Patrick.  He acknowledged that by doing so he would likely be arrested.  Burch's interview wrapped up sometime in the early morning hours on January 29, when he was arrested for Patrick's murder.

On this record, the state trial court determined that Burch was not in custody when he was interviewed at the Sheriff's Office, and that his statement was voluntary.  State v. Burch, No. 2004-CF-1581-NC (Fla. Cir. Ct. Aug. 9, 2005) (Order Denying Defendant's Amended Motion to Suppress Statements).  In

4

reaching its conclusion that Burch was not in custody, the trial court relied "especially on the fact that [Burch] initiated contact with detectives, came to the Sarasota Sheriff's Office on his own, was never handcuffed, was never confronted with specific evidence of guilt, and detectives did nothing to suggest that [he] was in custody." Id.  The court expressly rejected the suggestion that Burch was in custody simply because Detective Brewer read him his Miranda rights.  Id.

In determining that Burch's statement was voluntary, the trial court acknowledged that Burch "was certainly hoping for a plea bargain," but stated that "a careful review of his statement does not show any explicit suggestion of leniency, nor any express quid pro quo bargain for the confession.  Accordingly, [Burch's] statements were not rendered involuntary on that basis." Id.  The court also noted that "the reading of [Miranda] rights and [Burch's] acknowledgement of understanding the rights" supported its finding that his statement was voluntarily given. Id.

Following a jury trial, Burch was convicted of first-degree murder and sentenced to life imprisonment.  On direct appeal he argued, among other things, that the trial court should have suppressed his confession because he was in custody at the time he spoke to Sheriff's detectives, his Miranda warnings were invalid, and, in any event, his statement was involuntary.  The Florida appellate

court affirmed Burch's conviction and sentence without opinion.  See Burch v. State, 940 So. 2d 431 (Fla. 2d DCA 2006) (table).

After Burch exhausted his state post-conviction remedies, he filed the § 2254 petition now before us, in which he again raised his claim that his confession should have been suppressed because it was taken in violation of Miranda, and it was involuntary.  The district court denied Burch's petition, determining that the state court's denial of Burch's motion to suppress his confession "did not result in a decision that was contrary to, or an unreasonable application of, United States Supreme Court precedent."  In reaching this conclusion, the district court reviewed the same facts as the state trial court, but added to the mix that at the original hearing on Burch's motion to suppress, Detective Brewer "testified that during the time [Burch] was with him in the employee area of the Sheriff's Office where the interview room was located, [Burch] would have been free to leave the Sheriff's Office at any time had he requested to leave."[3]

Pursuant to our grant of a limited COA, this appeal followed.

---

[3]  The district court's observation that Burch "would have been free to leave the Sheriff's Office at any time had he requested to leave," based on Detective Brewer's testimony at the suppression hearing, was irrelevant to the custody analysis.  See Stansbury v. California, 511 U.S. 318, 323, 114 S. Ct. 1526, 1529 (1994) ("Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.").  However, the state court did not rely on this factor in its suppression order, and thus the district court's error does not influence our determination that habeas relief is not warranted here.

## II.    DISCUSSION

Burch makes three arguments in his appeal.  First, he disagrees with the state court's and the district court's determination that he was not in custody for purposes of <u>Miranda</u> when he gave his statements to the Sarasota County Sheriff's detectives.  Next, assuming that he was in custody, Burch contends that the <u>Miranda</u> warnings given by Detective Brewer at the beginning of his interview were not sufficient because they "were so denigrated . . . as to render the importance of those constitutional warnings to be in fact, no warnings at all."  Finally, Burch asserts that, in any event, his confession was involuntary because it was obtained through "false statements, deception and trickery," and especially because he "was misled to believe that he had to give a full and complete statement before a plea offer 'could' be considered."

"When examining a district court's denial of a § 2254 habeas petition, we review questions of law and mixed questions of law and fact <u>de novo</u>, and findings of fact for clear error."  <u>Grossman v. McDonough</u>, 466 F.3d 1325, 1335 (11th Cir. 2006).  "But we are highly deferential to the state court's decision on the merits of a claim."  <u>Connor v. Sec'y, Fla. Dep't of Corr.</u>, 713 F.3d 609, 620 (11th Cir. 2013) (quotation marks omitted).

> If a state court has adjudicated the merits of a claim, we may not grant habeas relief unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or

7

"resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Id. (quoting 28 U.S.C. § 2254(d)).

## A. WHETHER BURCH WAS IN CUSTODY

"[T]he issue whether a suspect is 'in custody,' and therefore entitled to Miranda warnings, presents a mixed question of law and fact." Thompson v. Keohane, 516 U.S. 99, 102, 116 S. Ct. 457, 460 (1995).

> Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. . . . The first inquiry . . . is distinctly factual. State-court findings on these scene- and action-setting questions attract a presumption of correctness under 28 U.S.C. § 2254(d).[4] The second inquiry, however, calls for application of the controlling legal standard to the historical facts. This ultimate determination . . . presents a mixed question of law and fact qualifying for independent review.

Id. at 112–13, 116 S. Ct. at 465 (footnote omitted).

Here, the following objective facts support the state court's conclusion that Burch was not in custody for Miranda purposes when he made his confession. First, Burch went to the Sheriff's office on his own initiative, and was immediately told he was not under arrest. See Oregon v. Mathiason, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977) (defendant's voluntary arrival at the police station, coupled

---

[4] The presumption of correctness accorded state court fact findings is now located in 28 U.S.C. § 2254(e)(1).

with police officer's admonishment that he was not under arrest, indicated that he was not in custody); Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004) (same). Second, Burch was not threatened, handcuffed, or physically restrained. See Mathiason, 429 U.S. at 495, 97 S. Ct. at 714 (defendant was not in custody because there was no indication that his freedom to depart had been restricted in any way). Third, Burch was allowed to take cigarette breaks during his interview, and the detectives offered to let him speak to his family. See Yarborough, 541 U.S. at 664, 124 S. Ct. at 2150 (considering that the detective twice asked the defendant whether he wanted to take a break in determining that he was not in custody). Fourth, Burch's parents and girlfriend "remained in the lobby during the interview, suggesting that the interview would be brief." See id. at 664, 124 S. Ct. at 2149.

However, other objective factors support Burch's contention that he was in custody for Miranda purposes. First, Burch was interviewed in a secured room, away from his parents and girlfriend. See id. at 656, 124 S. Ct. at 2145 (considering the fact that the defendant's parents were not permitted to accompany the defendant to the interview room as relevant to the custody determination). Second, one of the doors to this room was locked, and Burch's cigarettes and lighter were confiscated, suggesting that his freedom of action may have been limited. Third, the interview lasted for longer than two hours. See Yarborough,

9

541 U.S. at 665, 124 S. Ct. at 2150 (considering two-hour interview as a relevant factor in determining custody status).  Fourth, the detectives never told Burch that he was free to leave, and were constantly at his side throughout his time at the Sheriff's Office, including when he took smoking breaks.  See id. (considering the fact that the defendant was not told that he was free to leave when determining custody status).  Finally, Burch was immediately arrested upon the conclusion of his interview.  Cf. id. at 664, 124 S. Ct. at 2150 (considering that the defendant went home after the interview in determining that he was not in custody); Mathiason, 429 U.S. at 495, 97 S. Ct. at 714 (same).

Clearly there are differing indications as to whether Burch was in custody at the time he gave his statement.  However, it is not our task under AEDPA to review Burch's claim anew.  See Yarborough, 541 U.S. at 665, 124 S. Ct. at 2150 ("A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied the law incorrectly." (quotation marks and alterations omitted)).  Instead, "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively unreasonable." Id.  The Supreme Court's reasoning in Yarborough is directly relevant to our disposition of Burch's claim: "These differing indications lead us to hold that the state court's application of our custody standard was reasonable. . . . The custody test is general, and the state court's application of our law fits within

10

the matrix of our prior decisions." Id. Our analysis leads us to conclude that we may not grant habeas relief on the basis that Burch was in custody when he gave his statement to the Sheriff's detectives.[5] See id.

### B. WHETHER BURCH'S STATEMENT WAS VOLUNTARY

Whether a confession was voluntary is a question of law. Miller v. Fenton, 474 U.S. 104, 110, 106 S. Ct. 445, 449 (1985). Thus, under the AEDPA habeas standard, we are required to determine whether the state court's legal determination of voluntariness was contrary to or an unreasonable application of Supreme Court precedent. Land v. Allen, 573 F.3d 1211, 1217 (11th Cir. 2009). In doing so we take into account the totality of the circumstances. Id.

The state court's conclusion that Burch's statement was voluntary was neither an unreasonable determination of the facts in light of the evidence presented, nor was it contrary to, or an unreasonable application of, clearly established Federal law. Burch came to the Sheriff's Office voluntarily and on his own initiative. See Lawhorn v. Allen, 519 F.3d 1272, 1291 (11th Cir. 2008) (suspect's initiation of conversations with law enforcement indicated voluntariness). He repeatedly emphasized his desire to tell the detectives about his

---

[5] Because we determine that the state court's custody ruling was not unreasonable or contrary to Supreme Court precedent, we need not address Burch's second argument that his Miranda warnings were constitutionally deficient. See California v. Beheler, 463 U.S. 1121, 1124, 103 S. Ct. 3517, 3519 (1983) ("The police are required to give Miranda warnings only where there has been such a restriction on a person's freedom as to render him in custody." (quotation marks omitted)).

role in Patrick's death.  See Owen v. Fla. Dep't of Corr., 686 F.3d 1181, 1195 (11th Cir. 2012), cert. denied, 133 S. Ct. 2049 (2013) (suspect's desire to speak with police indicated voluntariness).  The detectives did not confront Burch with any evidence of guilt; indeed, Burch led the conversation throughout.  And although a plea bargain was briefly discussed, after reviewing the record we agree with the state court's determination that the detectives made no promises, explicit suggestions of leniency, or express quid pro quo bargains in return for Burch's confession.[6]  Cf. United States v. Nash, 910 F.2d 749, 752–53 (11th Cir. 1990) (promise to make cooperation known to the United States Attorney's Office with no guarantee of more lenient treatment is not an illegal inducement to a confession).

## III.    CONCLUSION

For these reasons, the district court's denial of Burch's habeas petition is

---

[6]  Liberally construed, Burch's pro se brief may be read to argue that the detectives' "denigrat[ion]" of his Miranda rights is a factor that should be considered in determining whether his confession was voluntary.  On this point, Burch complains that at the outset of his interview, the detectives gave him Miranda warnings, but characterized them as a "formality," and as one of many "procedures that we have to do that waste time."  Assuming that this factor is relevant to the voluntariness analysis, the record does not bear out Burch's claim that these statements so "denigrate[d] . . . the importance" of his Fifth Amendment rights as to "deprive [him] of essential knowledge" regarding abandonment or waiver.  Both before, and immediately after the detectives read him his rights, Burch stated that he wanted to talk.  Burch then repeatedly reaffirmed his desire to make a statement.  Also, there is no indication that Burch misunderstood the gravity of his decision to confess.  Indeed, the record reflects quite the opposite: Burch had "been told many times never to talk to a cop without an attorney present," and he anticipated being arrested as a result of his confession.  Thus, considered alongside the other factors supporting the trial court's voluntariness ruling, these statements do not prove that Burch's will was "overborne," or that the state court's voluntariness determination was unreasonable, or contrary to clearly established Federal law.  Land, 573 F.3d at 1217–18.

**AFFIRMED.**